# The State *v.* Shugart.

*Habeas Corpus Proceedings.*

1. *Gift-enterprise; what is meant thereby as used in the statute.*
   A gift-enterprise as used in the statute prohibiting the carrying on or representing a lottery, (Code, § 4808), is a scheme

[The State v. Shugart.]

for the division or distribution of certain articles of property to be determined by those who had taken shares in the scheme.

2. *Same; issuing trading stamps not carrying on a lottery or gift-enterprise.*—The issuing of trading stamps by an independent corporation to merchants who have entered into a contract with such corporation, where in accordance with such contract the merchant delivers such trading stamps with articles sold for cash, in accordance with previous announcement, and the purchaser when he acquires a designated number of such stamps can select and receive one of a number of articles exhibited at a store of the corporation issuing the stamps to the merchants, does not constitute the carrying on of a lottery or the maintaining of a gift-enterprise prohibited by the statute, (Code, § 4808); such transaction involving no element of chance.

APPEAL from the order of the Judge of the City Court of Selma.

Heard before the Hon. J. W. MABRY.

This was an appeal from the order of the judge of the city court of Selma, discharging the appellee, C. M. Shugart, from custody on *habeas corpus* proceedings. The petition for the *habeas corpus* was filed by said Shugart, who had been arrested on an affidavit made before a justice of the peace, and a warrant issued thereon. In the affidavit the person making the complaint deposed and said, "that on or about the 22nd day of December, 1902, in said county and State, the offenses of being concerned in setting up or carrying on a lottery, or a device of the like kind, or a gift-enterprise, or a scheme in the nature of a lottery, or gift-enterprise, was in the opinion of the complainant, committed against the peace and dignity of the State of Alabama, and that C. M. Shugart is guilty thereof."

On the hearing of the petition the State introduced evidence showing that on or about October 23rd, 1902, the petitioner, Shugart, engaged in or carried on within the city of Selma, what is known as a trading stamp store, and was at the time of his arrest engaged in said business; that said C. M. Shugart was acting in the capacity of agent and general manager of said business for the "Home Merchants Trading Association," a body corporate under the laws of the State of Kentucky. The following facts were also shown as stated in the bill of

[The State v. Shugart.]

exceptions: The Home Merchants Trading Association, an incorporation under the laws of Kentucky, established a store in the city of Selma, with the defendant as its manager or solicitor, and entered into contracts with a large number of merchants in that city whereby the association agreed to print in their directory and check book, the name, business and address of each merchant contracting with it, and to deliver to the homes of the people of Selma twenty thousand copies of said book, soliciting their trade, and instructing and explaining how to use the book, to advertise, and in every way to use its best endeavor to promote the business interests of said merchants. Each merchant entering into such contract agreed to receive from the association a sufficient amount of trading checks to supply all persons who might call for them; the check only to be given out as follows: one check to be given for each and every ten cents represented in a *bona fide* cash purchase from them, ten checks for one dollar, etc., the checks to be given when the purchases were paid for. The merchants agree to pay the association forty cents per hundred for all checks used, and to make weekly settlements for each page of checks used or given out; the checks were gummed stamps similar to postage stamps, but not so large, and were bound in sheets in covers. The association furnished blank books ruled in spaces wherein checks could be stuck, and these were the books referred to as the directory; this book gave minute directions how they were to be used, and the objects of the association and the merchants were particularly set forth. When a book containing five hundred checks or multiples of five hundred checks, or when that number of checks were presented at the store house of the association, the person presenting them could select any article from a large assortment of articles of value and use, such as household articles, bric-a-brac, furniture, etc. Many hundred of articles, useful and necessary in life, were kept in this store, and each article was plainly marked with its value in checks—the number of checks required to acquire it. None of these articles were marked in stamps above the market price of such article in money at any store in Selma—estimating the stamps or checks ·

at four dollars per thousand. Many articles were mark-
ed at a less value than they could be purchased for in
money in Selma, as the association through its central
office in Louisville, Ky., made large purchases of goods
and were thus able to purchase at the lowest figures.
No lot or chance was in any way employed, nor was
there any distribution of such articles. The system or
character of the business was, that when a merchant
member of the association sold as much as ten cents of
merchandise, he gave the purchaser who paid cash there-
for one check for each ten cents worth so purchased,
and when the holder of such checks to the number of
five hundred or multiples of that number, presented
such checks at the store of the association in Selma, he
could select any article in the store he desired at the
amount marked thereon in checks. It was not required
that the checks be pasted in the book, as the book was
provided for the convenience and safety of keeping the
checks. The customer paid nothing for the checks; if
he paid cash for the goods and asked for the checks they
were given to him. No merchants who had not entered
into the contract with the association was permitted to
purchase or use the checks. There were other merchants
in Selma, than those contracted with, engaged in each
line of business, respectively, and there were many mer-
chants in the same line of business who had contracted
with and were merchants of the association. It resona-
bly appears from the evidence that the merchants who
contracted with this association were induced to do so
with the expectation that it would increase their cash
sales of goods, and secure for them new customers, and
increase their business. For each cash purchase to the
amount of ten cents they gave the purchaser, if he re-
quested it, a trading check which cost the merchant four
dollars for one thousand checks; and the purchaser, if
he preserved the checks until he accumulated as many
as five hundred checks, or a multiple of five hundred,
could go to the store of the association and select any
article therein of the value of the five hundred checks,
or of greater value, if he had the checks to pay for such
selected article. The association sold its goods in this
way. Every purchaser who purchased to the amount
of ten cents worth of goods was entitled to the discount,

[The State v. Shugart.]

and this discount was the same to every cash purchaser. The check book and directory of the Home Merchants Trading Association was set out in full in the bill of exceptions.

Upon the evidence introduced the judge of the city court rendered a judgment ordering the petitioner discharged, and from this judgment the State prosecutes the present appeal.

MASSEY WILSON, Attorney-General, and W. W. QUARLES and W. R. SHAFER, for State.—The contracts made by the said Shugart, as set out in the bill of exceptions, are monopolistic in restraint of trade and against public policy in their terms and effect.—*Tuscaloosa Ice Co., v. Williams,* 127 Ala. 110; *S. C.* 28 So. Rep. 669; *S. C.* 50 L. R. A. 175 and notes.

The scheme operated by the defendant involves an element of chance in its very essence, as the holder of the stamps was not entitled to a present unless he presented for redemption a certain specified number of stamps, to-wit: 500. This alone is sufficient to constitute an enterprise in the nature of a lottery.—*Long* v. *Maryland,* 73 Md. 527; s. c. 7 L. R. A. 89, and notes; *State v. Bryant,* 74 N. C. 207; *State v. Shorts,* 32 N. J. L. 308; *Yellowstone Kit v. State,* 88 Ala. 196; *S. C. L. R. A.* 599 and note; *Langsburgh v. Dist. of Columbia,* 11 App. Cases Dist. Col. 512.

J. C. COMPTON and MALLORY & MALLORY, *contra.*— The phrase "gift-enterprise" in the statute must be construed in connection with the context, and the evil sought to be remedied. This entire statute is directed against the vice of gaming—a scheme cultivating the gambling spirit. If the business methods of this association have no chance, hazard, wager or bet in it—the hazarding of money or thing of value, with the hope by chance or lot of obtaining a larger sum or something of greater value than was invested, we insist that the statute does not denounce it.—Code of 1896, § 4808; *Loh-*

*man v. State,* 81 Ind. 17; 14 Amer & Eng. Ency. Law, 1005.

The transaction of the business as described in the bill of exceptions does not come within the definition of a gift-enterprise or lottery denounced by the statute.— Anderson's Law Dictionary, 488; Black's Law Dictionary, 539; *Horner v. U. S.* 147 U. S. 449; *People v. Gillson,* 109 N. Y. 395; *Long v. State,* 74 Md. 565.

The issuing of trading stamps which are to be delivered by a merchant to purchasers for cash, while a device for advertisement, contains no element of chance, and is not the carrying on of a lottery or a gift-enterprise as prohibited by the statute, Code 1896, § 4808. *Commonwealth v. Sisson,* 178 *Mass.* 578; *People ex rel Madden v. Dycker,* 72 N. Y. 308; *State v. Dalton,* 22 Rhode Island, 77; *Ex parte McKenna,* on *habeas corpus,* 128 Cal. 429.

DOWDELL, J.—The present appeal is prosecuted from an order of the judge of the city court of Selma discharging the appellee on a writ of *habeas corpus* from custody. The petitioner, appellee here, was arrested on affidavit and warrant before a justice of the peace, and by the justice committed to jail. The offense described in the affidavit was that of "being concerned in setting up or carrying on a lottery, or a device of the like kind, or a gift enterprise, or a scheme in the nature of a lottery or gift enterprise." The evidence is without conflict, and the same will be set out by the reporter in the report of the case, and the only question is whether the business engaged in, or carried on, by the defendant, falls within the definition of a lottery, or a gift-enterprise, or device of like kind, such as is denounced by section 4808 of the Crim. Code.

In the case of *Yellowstone Kit v. State,* 88 Ala. 199, it was said by this court, speaking through SOMERVILLE, J., after giving definitions of lottery from different lexicographers, as well as from adjudicated cases: "It may be safely asserted as the result of the adjudged cases, that the species of lottery, the carrying on of which is intended to be prohibited as criminal by the various laws of this country, embraces only schemes in which a

*valuable consideration* of some kind is paid, directly or indirectly, for the chance to draw a prize."

In *Loiscau v. State,* 114 Ala. 38, it was said by this court, speaking through COLEMAN, J.: "To be a criminal lottery, there must be a consideration, and when small amounts are hazarded to gain large amounts, and the result of winning to be determined by the use of a contrivance of chance, in which neither choice nor skill can exert any effect, it is gambling by lot, or a prohibited lottery." It was also said in this case, that "lot has been correctly defined to be 'a contrivance to determine a question by chance, or without the action of man's choice or will.'"

From these authorities, as well as from other adjudications, we think it may be safely said there can be no lottery in the absence of the element of chance.

What constitutes a "gift-enterprise" such as is denounced by the statute, so far as we are advised has never been decided by this court, and counsel say they are unable to cite any such case by this court. The statute does not in terms define it. The thing denounced, "gift enterprise," is used in the statute in connection with "lottery" which is likewise denounced and prohibited. The term "gift enterprise," therefore, must be construed in connection with the context, and the evil sought to be prohibited. The statute is manifestly directed against the vice of gaming. Without the aid of a statutory definition of a "gift enterprise," such as the statute intended to prohibit, we are left to determine its meaning by the context of the statute in which it is employed, and the definitions given by lexicographers, as well as by decisions of other courts. In *Lohman v. State,* 81 Ind. 17, the court took judicial notice that the phrase "gift enterprise" as used in the statute of the State—Indiana—against lotteries, meant substantially "a scheme for the division or distribution of certain articles of property, to be determined by chance, amongst those who had taken shares in the scheme."

In Bouvier's Law Dic., Rawle's Revision, Vol. 1, page 884, the following definition is given: "Gift Enterprise. A scheme for the division or distribution of certain articles of property, to be determined by chance, amongst

those who have taken shares in the scheme; the phrase has attained such a notoriety as to justify courts in taking judicial notice of what is meant and understood;" citing 81 Ind. 17, and 106 Mass. 422. The same definition is given in Black's Law Dic. 539 as that above.

In Anderson's Law Dic. p. 488, the following definition is given: "A gift enterprise, in common parlance, is a scheme for the division or distribution of certain articles of property, to be determined by chance, among those who have taken shares in the scheme."

Thus it will be seen, that to constitute a "gift enterprise," such as is denounced by the statute, the element of chance must enter into the scheme. The business or transaction engaged in, or carried on, by the appellee is fully set forth in the bill of exceptions, and wholly fails to disclose any element of *chance* entering into its conduct. Moreover, the bill of exceptions expressly recites that "no lot or chance was in anywise employed nor was there any distribution of such articles." The scheme, if such it may be termed, was only a mode of advertising by those merchants who entered into it. The articles of property given away by the company, of which appellee was the manager, was not by lot or chance, nor by way of distribution of prizes among share or ticket holders in any chance scheme. We are quite clear that there was nothing in the transaction offensive to the statute against "lotteries" and "gift enterprises."

The case of *Lansburgh v. Dist. of Columbia,* 11 App. Cases Dist. Col. 512, relied on by appellant as an authority in this case, was based on a statute which in terms defined what should constitute a "gift enterprise" within the meaning of the statute. Our statute does not undertake to do this. And as stated above, our statute is plainly intended to suppress the evil of gaming—and the "gift enterprise" denounced, like the lottery, is such a scheme, device, or contrivance into which the element of chance enters in the determination of results. The *Lansburgh case, supra,* can hardly be said to be in point since the statute in that case defined the "gift enterprise" prohibited. Besides, the following cases are opposed to the views expressed in that case, viz: *Commonwealth v. Sisson,* 178 Mass. 578; *People*

[Beal v. The State.]

*ex rel. Madden v. Dycker*, 72 App. Div. Rep. N. Y. 308; *State v. Dalton*, 22 R. I. 77; *Ex parte McKenna*, 126 Cal. 429.

We concur in the decision of the judge of the city court, that under the facts no legal cause existed for detaining the defendant, and he was properly discharged from custody.

As to whether the affidavit charged any offense at all, in affirming that such offense "was in the opinion of the complainant committed" etc., we merely call attention to the case of *Monroe v. State*, 137 Ala. 88. No objection, however, was made to the affidavit, and the conclusion reached by us on the facts in the case, renders it unnecessary to express any opinion on the question, had an objection been raised.

Affirmed.