WINSTON v. BEESON.

(Filed May 3, 1904).

LICENSES—*Lotteries—Taxation—Ordinances—Acts 1903, ch. 247, secs. 51, 76—The Code, sec. 3800—Trading Stamps.*

> Under the charter of the city of Winston, dealers in trading stamps do not come within the provision of an ordinance taxing "gift enterprises."

ACTION by the City of Winston against E. E. Beeson, heard by *Judge W. R. Allen,* at February Term, 1904, of the Superior Court of FORSYTH County.

The defendant, The Sperry & Hutchinson Company, was tried in the Superior Court upon appeal from the mayor of Winston, who fined them $20 for issuing and selling to merchants what are known as trading stamps without obtaining a license so to do, contrary to the provisions of an ordinance of that city forbidding the sale of such stamps to merchants or manufacturers, or the use of the same by the latter, without having paid the license tax of fifty dollars imposed by the ordinance for the privilege; and the defendant Beeson was,

tried for issuing and selling trading stamps as manager and agent of his co-defendant, in violation of the said ordinance passed under the authority given in the charter of the city of Winston, section 65, subsection 11, which is as follows: "Each distiller of fruits or grains, each distiller or compounder of spirituous liquors, each gift enterprise or lottery, each railroad company having a depot or office in town, a license tax of not exceeding fifty dollars a year."

It is not claimed by the State that any other special authority has been given by the Legislature in the charter of Winston to impose a license tax of fifty dollars upon the defendants, except that contained in the above extract from the charter. Subsection 13 of section 66 of the charter provides "That the Board of Aldermen shall have the power to impose a license tax on any business carried on in the city of Winston not before enumerated herein, not to exceed ten dollars a year." Private Acts 1891, chapter 307, as amended by Acts 1899, chapter 103. No special reference is made in the verdict to the charter of the city as contained in the two chapters of the Acts of 1891 and 1899 above referred to, but it was admitted that the present charter is the one to be found in those two chapters, and counsel referred to the charter in the argument, and especially to the provisions of it which relate to taxation. We will therefore consider it as a part of the case.

It may be that as a section of the charter was put in evidence, we should consider the other sections without any agreement, but however that may be we hold that under the circumstances the charter as a whole is now before us.

The jurors returned a special verdict as follows:

That the Sperry & Hutchinson Company is a corporation organized under the laws of the State of New Jersey, and the defendant Ernest E. Beeson is the local agent and manager thereof located in the city of Winston, North Carolina.

That the said defendant Beeson for and on behalf of his company located a business in the city of Winston in the following manner:

That he first applied to the proper officers and paid the license fees prescribed by the Revenue Act for trading stamp companies, and duly received his license for doing business in the said county and State, and then applied to the city of Winston asking for a license, and offering to pay ten dollars as prescribed by the ordinances of the city for advertising businesses. Whereupon the city, through its officers, declined to grant said license for less than fifty dollars. Thereupon the defendants began business in the city of Winston. That said Beeson approached a good many merchants in various businesses in the city of Winston and entered into contracts with them to use what was known as a trading stamp. That he did, on October 30, 1903, enter into a contract with W. B. Hudson, which contract is hereto attached and made a part of this record, and marked "Exhibit No. 1." That in carrying out said contract with said Hudson, and with others, the defendants advertised in the newspapers the business of the said parties with whom it had contracted for one week, had books called "Directories" printed and circulated throughout the town in the various homes and business establishments in the city of Winston, which books contain the names of the various merchants with whom the defendant company had contracted; and containing an explanation of the business, and having blank leaves diagramed for the purpose of pasting thereon stamps, which said book is made a part of the record marked "Exhibit No. 2."

That the defendant company, in pursuance of this contract marked "Exhibit No. 1," promises and agrees to advertise the business of the parties with whom he contracts in various forms and ways, and to induce persons to go to the store of the said parties with whom it contracts and there

135——18

buy goods and make demand upon the merchants for trading stamps.

That the defendants sold to the said W. B. Hudson, and proposes to sell to all others, certain trading stamps, and delivered to the said Hudson one pad of trading stamps containing 990 trading stamps, which are small stamps about the size of a postage stamp, containing certain numbers and the name of the Sperry & Hutchinson Company, which stamps are exact in form as those which will be found pasted on the first blank leaf of "Exhibit No. 2." That these stamps are sold to the merchants for about one-half cent each, and it contracts that on demand of customers that the merchant will give, for every ten cents worth of goods which he sells for cash to said customers, one of said stamps. That the customer gathers said stamps in this way, and when he obtains, either through his own purchases or through the purchases of others, stamps to the number of 990, which are pasted in a book in form as hereto attached marked "Exhibit No. 2," he then goes to the store-house of the Sperry & Hutchinson Company, which is established in the city of Winston and managed by defendant Beeson, and there selects an article of merchandise. That said articles of merchandise consist of furniture, tableware and other articles of virtu, which are marked as, worth one book, worth two books, etc., meaning that 990 stamps aggregated and put in a book constitute one book, and entitles the holder thereof to get any article of his own selection in said store, which is valued and labeled for one book, and so on.

That the Sperry & Hutchinson Company purchase their goods and merchandise in large quantities and the managers of the various stores make requisition to the general house for goods as they are needed in the various establishments. That the said merchandise of the Sperry & Hutchinson Company are such articles as are usually found in stores of general

merchandise, and those labeled one book are approximately worth $4.50, those labeled two books, $9.00, etc., and will compare favorably in price with the retail prices of such articles in any other establishment in the city of Winston. That the defendants in circulating the Directory, which is marked "Exhibit No. 2," in order to induce persons to trade with the merchants using the trading stamps, paste on the first blank page of said Directory ten stamps, which are given by defendant company without consideration to the persons having the Directory. That these, and all other stamps issued by merchants, are redeemable by the Sperry & Hutchinson Company at its store in Winson, or at any of its various stores throughout this State or the United States as above stated.

That the defendant company has done business in the city of Raleigh for six months, and at this time 14-16 of the stamps issued by the merchants have been presented and redeemed by the defendant company. That no percentage is found of the number of lapsed stamps, or stamps which are not finally redeemed. That in North Carolina there are at this time store-houses of defendant company located and doing business, among others, in the cities of Raleigh, Greensboro, Durham and High Point. That there is no time limit to the redemption of said stamps. That they are transferable by those who have them, and are bound, under the contract, to be redeemed whenever presented in the number above set forth to any of the various houses of the Sperry & Hutchinson Company.

That the contracts of defendant company made in the city of Winston, with others as above set forth, are for a period of one year, except that the contract which defendant made with E. W. O'Hanlan was as follows: That it differs from the contract marked "Exhibit No. 1," in that the words "parties of the first and second parts mutually agree that

this agreement shall be and remain in force for one year from the date of the opening of the store aforesaid of the party of the first part" were stricken out of the contract, and it was agreed that the contract should continue at the option of either of the parties to said contract, and that the said defendants would not enter into a similar contract with any other drug store in Winston during the continuance of the contract with the said E. W. O'Hanlan.

That the defendant Beeson delivered stamps to W. B. Hudson, a grocery merchant in the city of Winston, and the said Hudson delivered said stamps to one of his customers according to the terms of the contract as above set forth. Defendant only redeems stamps when presented in a full book consisting of 990 stamps. The portion of the charter of Winston and the ordinance under which defendant was arrested appears in this record as a part of this verdict.

And the jurors say that they find the foregoing facts, and if upon said facts the defendant is guilty in law, they find him guilty, and if upon the foregoing facts the defendant is not guilty in law, they find him not guilty.

Upon this special verdict his Honor adjudged that the defendants were not guilty, from which the State and the city appealed.

*Watson, Buxton & Watson,* with *Robert D. Gilmer, Attorney-General,* for the plaintiff.

*Glenn, Manly & Hendren* and *W. B. Crisp,* for the defendants.

WALKER, J., after stating the case. It is provided by section 3800 of The Code that cities and towns may levy taxes for municipal purposes on all persons, privileges and subjects within the corporate limits, which are liable to taxation for State and county purposes. By the Revenue Act

of 1903, chapter 247, sections 51 and 76, a license tax of twenty dollars is imposed "on any gift enterprise or any person or establishment offering any article for sale and proposing to present a purchaser with a gift or prize as an inducement to purchase," and a license tax of fifty dollars in each county where the business is conducted is imposed "upon every person, firm or corporation who issues or sells to merchants or manufacturers any trading stamps or other devices to be redeemed by the person issuing or selling the same." The city of Winston could therefore have required the defendant corporation to pay a license tax of fifty dollars under section 3800 of The Code and section 76 of the Revenue Act, if it were not for the clause in its charter by which the tax on all subjects not otherwise specifically provided for is limited to ten dollars. It is not provided in section 3800 that cities and towns may lay taxes to the same amount as the State and counties can impose, but upon the same privileges and subjects as are taxed for State and county purposes. The amount of the tax is left to be determined by the charter of the particular city or town, and, if there is no restriction in the charter, then by ordinance; but whenever such a limitation upon the city or town to tax is inserted in its charter, the power to tax by ordinance or otherwise must be exercised within the limit thus fixed by the law. Municipal corporations can levy no taxes except such as are authorized by their charters, or, where the charters are silent, such as are otherwise authorized by law. *Winston v. Taylor,* 99 N. C., 210; *State v. Bean,* 91 N. C., 554; *Latta v. Williams,* 87 N. C., 126. All these cases relate to license or privilege taxes. As to taxes on property, see *Redmond v. Comrs.,* 106 N. C., 122, 7 L. R. A., 539. By these considerations and authorities we are brought to the conclusion that the city of Winston had no authority to lay a privilege or license tax upon the defendant company exceeding in amount ten dollars, which is

the maximum allowed by its charter, unless it has acquired the power to exact the payment of a higher tax by virtue of the provision of section 65, subsection 11, which authorizes it to impose on "each gift enterprise a license tax not exceeding fifty dollars for each year."

If the business as conducted by the defendant corporation in the city of Winston is a "gift enterprise," the tax was lawfully imposed, but if it is not such an enterprise the defendants were justified in refusing to pay the tax and the judgment below was right. In this contention between the parties, after a careful examination of the authorities and a consideration of the question involved we are with the defendants, as we think it must be conceded that unless the city had the power under the provision of the charter last mentioned it was without power to pass the ordinance under which this prosecution was instituted before the mayor, and we must hold that it had no such power under that provision.

In passing upon the question whether the business of the defendant company falls within the meaning of the term "gift enterprise," we must not confine ourselves solely to any definition of those words which is intended to convey to our minds the meaning they have acquired by mere popular use, nor should we give to those words simply a literal interpretation. We must go deeper than that and ascertain what was the real purpose and intention of the Legislature in using them, or, in other words, what is their legal meaning and import. We would fall short of a full and proper investigation of the question if we should be content with saying that the company's business is in a general sense an "enterprise" at which "gifts" are used as an inducement to attract purchasers to the stores of its customers or patrons, and therefore it must be "a gift enterprise." This would be "sticking in the bark." The words had a well-known and definite meaning in the law when the statutes we have mentioned

were passed, and by a well-settled rule of statutory construction they must have that meaning in any interpretation we may give to those statutes.

The law lexicographers define a "gift enterprise" as a scheme for the division and distribution of certain articles of property to be determined by chance among those who have taken shares in the scheme. Black's Law Dictionary, page 539; Bouvier's Law Dictionary, Vol. I, page 884; Anderson's Law Dictionary, page 488. In *Lohman v. State,* 81 Ind., 17, it was said, in approving the definition just given, that the words "gift enterprise," as thus understood, had attained such notoriety that the courts would take judicial notice of what is meant when they appear in legislative enactments. It has been said in some of the books and by several of the courts, that while the word "lottery" is not a technical term of the law, and to dispose of property of any kind by lottery is not an offense which has a recognized and established legal definition, and that the meaning of the word must be determined by reference to its popular sense and the mischief intended to be redressed by the statutes, yet when thus construed it indicates a scheme for the distribution of prizes and for the obtaining of money or goods by chance. The word "lottery" has been variously defined as a game of hazard in which small sums are ventured for the chance of obtaining a larger value either in money or other articles, a distribution of prizes won by lot or chance, a kind of game of hazard, wherein several lots of goods or merchandise are deposited in prizes for the benefit of the fortunate, or a sort of gaming contract by which, for a valuable consideration, one may, by favor of the lot, obtain a prize of a value superior to the amount or value of that which he risks. *State v. Mumford,* 73 Mo., 659, 39 Am. Rep., 532; *State v. Clark,* 33 N. H., 334, 66 Am. Dec., 723. Tested by any one of these approved definitions, a lottery always involves the

element of chance, fortune or hazard. It is gaming, pure and simple.

This being established, let us see if it assists us in arriving at the meaning of the words "gift enterprise" as used in the charter of Winston. The rule of construction is that associated words explain and limit each other. When a word used in a statute is ambiguous or vague, its meaning may be made clear and specific by considering the company in which it is found and the meaning of the terms which are associated with it. This idea is expressed in the maxim *"nositur a sociis."* Black's Interpretation of Laws, 135; Sutherland Stat. Cons., section 262. We find, not only in the charter under consideration, but in other statutes of the State relating to revenue, that the words "gift enterprise" are used in close and intimate association with the word "lottery." In the Revenue Act, passed at the same session as the charter of Winston, it was provided (Acts 1891, chapter 323, section 15) that a tax should be laid on every gift enterprise or on any person or establishment offering any article for sale and proposing to present purchasers with any gift or prize as an inducement to purchase, and on any lottery, whether known as a beneficial association, gift concert, or otherwise, provided that the section should not be construed as giving license or as relieving such persons or establishments from any penalties incurred by a violation of the law. This provision has been retained, we believe, in every Revenue Act passed since that year. It would seem plain, from the connection in which the words are used, and also by the very use of the words themselves, that the Legislature intended to tax only those enterprises, schemes and offers of bargains which involve substantially the same sort of gambling upon chances as in any other kind of lottery, and which appealed to the disposition or propensity for engaging in hazards and chances with the hope that luck and good fortune may give

a good return for a small outlay.   The provision refers to gifts or prizes, the precise nature of which are not known at the time, and to cases in which the element of uncertainty is always present.   It is restricted therefore to the kind of enterprises which appeal to the gambling instinct.

The Legislature has not looked upon the business of the defendant company as a gift enterprise, for in the Revenue Acts of 1901 and 1902 it was not taxed as such, but was excluded from that class (section 61) and placed in a class by itself (section 76), and so taxed as to indicate that it was considered a perfectly legitimate and proper business.   There is no saving in section 76 concerning criminal prosecution as there is in section 61.

A statute of similar import to the provision in this charter was held, in *Commonwealth v. Emerson,* 165 Mass., 146, to embrace such a scheme or offer of bargains into which chance entered as one of its elements, and by which persons are induced to buy what they do not want in the hope or expectation or upon the hazard of getting something else as a gratuity which it might turn out they did want, but the exact character of which they do not at the time know.   It would be strange indeed that the Legislature should link two such terms together in many statutes without intending that they should have a kindred meaning, but intending on the contrary that they should be diversely construed.   We prefer to conclude that the purpose was not to impose a tax upon a perfectly innocent and harmless business and to place it in the same class and category with lotteries, which have fallen under the ban of an enlightened public sentiment and under the condemnation of the law, but to tax such "enterprises" as partake of the nature of lotteries and hold out temptations and allurements to the unwary and credulous, or to those who are willing always to take chances on results in the hope of getting a great deal for a very little.

Having reached the conclusion that the words "gift enterprise" as used in the charter refer only to such a one as includes the element of chance, we must next inquire whether the business of the defendant company comes within the meaning of those words as thus construed. From the definitions we have already given of a lottery or scheme for the disposition or distribution of prizes or property by chance, it appears that three things must concur in order to constitute it: (1) There must be the purchase of a right; (2) the right must be a contingent one to receive something greater than that which is purchased; and (3) the contingent right must depend upon a lot or chance. We have not been able to discover any one of these elements in the plan devised by the defendant company for the conduct of its business. The right to have the stamps redeemed depends upon no contingency, chance or lot whatsoever; the person receiving the stamps upon the purchase of goods is not in any degree deprived of his choice or will. Indeed, by the contract he is given full and free exercise of his choice and will. The right of selection among the articles kept by the stamp company in its store is expressly given, and the stamp collector may choose the best or the most valuable or such a one as may be most useful to him or pleasing to his taste, as he may be minded. The articles are all publicly exhibited, and, before the purchases are made or the stamps collected, any person proposing to buy and to receive the stamps from the merchant has free access to the store, where he may see and examine the goods from which his selection may be made. There is therefore no uncertainty as to the nature, character or value of the premium, if we may so call it, with which the stamps will be redeemed. The fact that the stamps are redeemed at a place other than the one where they are issued certainly does not introduce into the scheme any element of chance. We can discern no practical differ-

ence between this arrangement of the parties and one by which the merchant agrees to discount his bills where cash is paid by his customer at the time of the purchase, and the giving of stamps redeemable at a store of another in goods to be selected by the holder, instead of an actual discount by the merchant, does not in law vary the case or change the real and substantial character of the transaction. The plan as outlined in the verdict seems to be one for advertising the merchant's business and his wares and enabling him to sell his goods for cash instead of on time. This it must be conceded is an advantage to him. It is also a benefit to the customer, who practically receives a discount and who will buy more cautiously and judiciously if he pays cash, and will spend only according to his means. The stamp company is undoubtedly benefited also by the sale of its goods and anything it may gain by the failure to present stamps for redemption. But where is there anything in the transaction from first to last that bears any likeness or resemblance to a lottery or an enterprise of chance? What declared policy of the State or the law forbids it? It was suggested that the gain to the stamp company by the failure to present stamps at the store for redemption in goods involved an element of chance. If this is so, the government and the banks are engaged in a prohibited business, for both benefit by the loss of bills and currency which they put in circulation. The same may be said of railroad companies who issue tickets which may not be used and never come back to them for redemption. Can it be correctly said that this is the result of chance? Many other similar instances might be mentioned, but it has never been supposed that the business in which such gains are made was, for that reason, unlawful. Nor does the fact that the defendant's business is novel make it unlawful or subject it to taxation.

We turn now to the books and find that the decisions of

the courts of other States are in perfect accord with the view we take of this matter.

The Court of Appeals of Virginia has recently considered the same question in *Young v. Commonwealth,* 45 S. E. Rep. (Va.), 327, in which the Court says: "We find nothing in the contract between Sperry & Hutchinson and the defendant, nor the transactions with customers in pursuance of, such contract, that is not a legitimate exercise of one's right to prosecute his own business in his own way. As has already been said, it appears to be simply one of many devices fallen upon in these days of sharp competition between trades-people to attract customers or to induce those who have bought once to buy again, and in this respect is as *innocent as any other form of advertising.*" Substantially the same is said in *Ex-parte McKenna,* 126 Cal., 429: "It appears," says the Court, "to be simply a device to attract customers or to induce those who have bought once to buy again, and in this respect is *as innocent as any form of advertising.*" In *State v. Shugart,* 35 So. Rep. (Ala.), 28, the business of the defendant is thus described: "The scheme, if such it may be termed, was only a mode of advertising by those merchants who entered into it. The articles of property given away by the company of which the appellee was the manager was not by lot or chance, nor by way of distribution of prizes among share or ticket-holders in any chance scheme. We are quite clear that there was nothing in the transaction offensive to the statute against lotteries and gift enterprises." In *State v. Dalton,* 22 R. I., 77, 48 L. R. A., 775, 88 Am. St. Rep., 818, will be found an able and elaborate discussion of the question and an unanswerable argument sustaining the defendant's contention that there is no element of chance in its enterprise, if it may be so called. In that case the Court says: "In other words, the act recognizes the right of a person to give away an article of merchandise in connection with

and as an inducement to the making of a sale of some other article, but provides in effect that the giving of such article must be .done by him directly and not through a third person. We fail to see that there is any substantial difference in principle between the two methods, or that either bears any resemblance to a lottery. The element of chance, which is the basal principle in every scheme in the nature of a lottery, is wholly wanting." See also, *People v. Dycker,* 72 App. Div. (N. Y.), 308; *Comrs. v. Emerson,* 165 Mass., 146; *Comrs. v. Sisson,* 178 Mass., 578; *People v. Gillson,* 109 N. Y., 389, 4 Am. St. Rep., 465; *Long v. State,* 74 Md., 565, 12 L. R. A., 425, 28 Am. St. Rep., 268. Several cases have been decided the same way in the lower courts of some of the other States. They involved the very question we have under consideration, but as they have not been reviewed by the courts of last resort we will not make further reference to them.

Since this opinion was prepared, we have read the case of *Lausburgh & Sperry v. Dist. of Columbia,* 11 App. Cases (D. C.), 512, which has been called to our attention. We do not· think anything said in that case, which was necessary to its decision, conflicts with what we have herein decided. The only point in that case was whether the business of the defendants came within the meaning of a "gift enterprise," as defined by the statute of the District. This will appear from the following passage in the opinion of the Court: "Without the necessity of declaring that the acts proved in this case constitute the conduct of a lottery or gift enterprise, as those words are commonly understood, or even of finding that the element of chance operates intentionally and distinctively in the scheme of the trading stamp company, we think, nevertheless, that they come within the prohibition of the statute, which, as before said, furnishes its own definition of "gift enterprise." The defendant's counsel

also contended that the ordinance is not a legitimate exercise of the police power, is discriminating, prohibitory and unreasonable, and is unconstitutional and void. We need not consider this sweeping attack upon the validity of the ordinance, though it is supported by a very learned and able argument, for we have concluded that the business of the defendant as described in the special verdict does not come within the meaning of the term "gift enterprise" as used in the charter. The city of Winston being limited in the power to pass ordinances by its charter and the general law, was without the necessary authority to pass the ordinance upon which this prosecution is based. The Court properly adjudged upon the special verdict that the defendants are not guilty.

Affirmed.