## STATE v. J. DANENBERG.

(Filed 1 December, 1909.)

**1. Taxation—Non-Intoxicants—"Near Beer"—Recognized Business—Cities and Towns—Ultra Vires.**

The taxing by a city in a prohibition State of one in the business of selling "near beer," mentioned among drinks containing only a small per cent of alcohol and non-intoxicants, is not *ultra vires*, its charter providing for the raising of revenue by taxation of real and personal property, and making it a misdemeanor to carry on any business, etc., without paying a license tax when one has been levied thereon, the sale of "near beer" being a recognized business and a legitimate subject of taxation under the general laws of the State.

**2. Same—Discrimination—Constitutional Law.**

An ordinance of a city levying, under the provisions of its charter, a license tax upon "near beer" and all other like beverages containing as much as one-half of one per cent of alcohol, is uniform, bears equally upon all who come within its terms and are engaged in that character of business, and not discriminative within the meaning of Art. V, sec. 2, of the State Constitution.

**3. Taxation Prohibitive—Non-Intoxicants—"Near Beer."**

By requiring the payment of an annual license tax to the State by those who deal in "near beer," the General Assembly has recognized and legalized its sale, and a prohibitive tax thereon levied by a municipality is void.

**4. Same—License—Reasonableness—Courts' Jurisdiction.**

The reasonableness or unreasonableness of a tax levied exclusively for revenue is a matter generally within the exclusive province of the legislative department, and not a matter for the courts; but when a license fee is taxed upon a legitimate business as a police regulation also, the courts will consider whether it is so unreasonable as to be prohibitive.

**5. Same—Police Powers.**

A municipality having the power by its charter to levy a license tax on dealers in "near beer" and kindred drinks may consider the question both from the standpoint of revenue and police regulations, and with regard to the extraordinary opportunities it affords for violating the prohibition law and the extra police surveillance it entails.

**6. Same—Proof.**

In determining whether a city ordinance imposing a license tax on dealers in "near beer" and kindred drinks is prohibitive, the courts cannot consider solely the probable effect it would have on the business of the complaining party in complying with the ordinance.

**7. Cities and Towns—Non-Intoxicants—"Near Beer"—Ordinances—Presumptions—License Prohibitive—Proof.**

Giving the ordinance of the city of Charlotte, imposing a license tax of $1,000 on every dealer in "near beer" and kindred

drinks the benefit of the presumption of reasonableness, the facts appearing of record in this case are not sufficient for the courts to say that the ordinance was unreasonable.

**8. Taxation—License—Police Powers—Federal Constitution—Constitutional Law.**

Imposing a license tax for the sale of "near beer" and other kindred drinks comes within the police power of a State and does not contravene the Fourteenth Amendment to the Federal Constitution.

APPEAL from *Webb., J.,* September Term, 1909, of MECKLENBURG.

The defendant was convicted in the recorder's court of the city of Charlotte of a misdemeanor for selling near beer without a license, and appealed to the Superior Court of Mecklenburg. He was convicted by the jury, and from the judgment of the court appealed to the Supreme Court.

The facts are stated in the opinion of the Court.

*Attorney-General* and *George L. Jones* for the State.
*John J. Parker* and *Stern & Stern* for defendant.

BROWN, J.   Defendant was charged with engaging in the business of selling near beer without paying the license tax imposed thereon by the city of Charlotte.   The ordinance in question taxes every person engaged in the sale of near beer $1,000.   The defendant admitted that he was engaged in the business and had not paid the license tax, but contended that the ordinance is *ultra vires,* as well as discriminative and prohibitive, and that it violates the Fourteenth Amendment of the Constitution of the United States.

1. Is the city of Charlotte without authority to pass the ordinance?

The ordinance in question reads as follows:

"Beverages.—On every retail or wholesale dealer in cider (except sweet, unadulterated cider, made from apples), Beerine, Near Beer, Tidal Wave, Twenty-Three, Hop Beverage, Noxall, or any drink, under any name or description whatsoever, containing as much as one-half of one per cent. of alcohol, per annum, $1,000."

We think the authority to levy a license tax upon the business of selling near beer, as upon any other business, is plainly conferred by sections 80 and 82 of the city charter.   The first-named section provides for raising revenue for the city by taxation, not only upon real and personal property, and also in connection with section 81 gives express authority to levy license taxes.

STATE *v.* DANENBERG.

Section 82 makes it a misdemeanor to carry on any business, profession, trade or avocation of any kind in said city, upon which a license tax has been levied, without first obtaining a license therefor.

Near beer is now a recognized article of commerce, and the sale of it appears to be an established business in those States which have adopted general prohibition laws. It has been judicially defined by the Supreme Court of Georgia to be "a term in general currency, used to designate any and all of that class of malt liquors which contain so little alcohol that they will not produce intoxication, even though drunk to excess. It includes all malt liquors which are not within the purview of the general prohibition law." *Campbell v. Thomasville,* 64 S. E. Rep., 821.

It is a distinct business, which from its very nature admits of strict regulation, under the general police power of the State, by its municipalities, upon which that power may have been conferred. It stands legitimately in a different class from the business of selling soda, mineral waters, lemonade and the like. As was wittily said by the Attorney-General, upon the argument: "Near beer has made for itself a name and a place. It belongs in its own class, and it should not complain when the law shows respect for its position."

We are therefore of opinion that, being a recognized business, it is a legitimate subject of license taxation, and that the city of Charlotte, under its charter, has power to impose a license tax upon those who engage in it. *State v. Irwin,* 126 N. C., 992; *Holland v. Isler,* 77 N. C., 1.

2. Is the ordinance discriminative? It is contended that the ordinance in question discriminates between persons of the same class, and makes an arbitrary classification without real ground of difference, and thus violates Article V, section 3, of the Constitution of this State. It has long been held in this State and elsewhere that a tax is uniform and does not discriminate when it is equal upon all persons belonging to the described class upon which it is imposed. *Gatlin v. Tarboro,* 78 N. C., 121; Burroughs on Taxation, sec. 77; *State v. Worth,* 116 N. C., 1007; *Rosenbaum v. Powell,* 100 N. C., 525.

The ordinance in question levies the same tax upon all engaged in the business of selling near beer and other similar drinks as beverages containing as much as one-half of one per cent. of alcohol, and it is admitted that near beer contains one and a half per cent. of alcohol and comes within the terms of the ordinance. We think the law is therefore uniform, in that it bears equally

upon all who come within its terms and are engaged in the character of business taxed by it.

3. The next question presented by the appeal is whether or not the tax of $1,000 upon the business of selling near beer is unreasonable and prohibitory. The General Assembly of 1909 has recognized and legalized the sale of near beer by requiring from those who deal in it an annual license tax for the State of $20 and at least an equal sum for the counties. Section 63, chapter 438, p. 676, Public Laws 1909.

It therefore follows, as is said by the Supreme Court of Georgia, in a similar case, that, "Since the General Assembly, by the near beer tax act, has expressed the general policy of permitting its sale by those who pay the tax, the municipalities may not, in the absence of express charter authority, prohibit the sale entirely. They may, however, under the usual general-welfare clause, enact reasonable regulations governing its sale." *Campbell v. Thomasville, supra.*

As municipal corporations have no inherent police powers, and can exercise only those conferred by the State, it of necessity follows that, in the absence of express charter authority, they cannot, directly, by taxation, prohibit or destroy a business legalized by the State. *State v. Danenburg,* 150 N. C., 800, and authorities cited; 1 Dillon on Mun. Corp., sec. 89; Cooley on Taxation, 598; *Dobbins v. Los Angeles,* 195 U. S., 223. The contention here is that the tax destroys it.

It appears to be well settled that, unles the power to tax is transcended, the reasonableness or unreasonableness of a tax levied exclusively for revenue is a matter generally within the exclusive province of the legislative department of the State and is not a matter for the courts; but that when the license fee is demanded also as a police regulation, the courts will consider whether it is so unreasonable as to amount to a prohibition upon lawful vocations which cannot be prohibited. Tiedeman Police Powers, p. 277; *State v. Hunt,* 129 N. C., 688; *Winston v. Beeson,* 135 N. C., 277.

The consensus of judicial decision is stated by Smith, in his work on Modern Mun. Corp., sec. 1455: "The authority to license and regulate particular privileges or occupations is usually regarded as a police power, but when license fees are imposed for the purpose of revenue they are taxes. Such license fees can only be considered as taxes when clearly authorized as such by the Legislature. When a revenue authority is conferred, the amount of the tax, unless limited by the grant, is left to the

151—46

discretion of the municipality. But such a grant of authority would not warrant taxes sufficiently to be prohibitory."

This is a fair statement of the law, with the added qualification that, in the absence of positive evidence to the contrary, such ordinances are presumed to be reasonable. 21 Am. & Eng. Ency., 783, and cases cited in note 1.

In determining whether an ordinance is unreasonable, the courts cannot consider solely the probable effect of complying with the ordinance on the business of the party complaining. In Illinois it is held that such evidence is properly excluded. *Launder v. Chicago,* 11 Ill., 291. In Alabama it is held that "The reasonableness or unreasonableness of a license tax cannot be determined by the extent of the business of a single individual. There may be incompetence or negligence on his part, or other considerations affecting the extent of his business." *Railroad v. Attala,* 118 Ala., 362.

In fixing the proper license tax upon dealers in near beer and kindred drinks, we conclude, upon reason and precedent, that the municipal authorities may consider the question, both from the standpoint of revenue and police regulation, and the cost thereof, provided they do not thereby prohibit and annihilate the business entirely.

*Leavenworth v. Kansas,* 15 Kan., 627, is an instructive case upon this point. The territory and population to be supplied is an important consideration in estimating the value of the right conferred. It is worth a great deal more to be permitted to conduct a business of this kind in a large city than in a small town, and a license tax that would be within the bounds of reason when imposed in Charlotte might be unreasonable and prohibitive if imposed in a small place. Other considerations that may properly enter into the matter are the cost of police surveillance and the propriety of reducing the number of saloons in order that such surveillance and supervision may be more effective and less costly.

It appears from the evidence in this record that, although near beer, properly made, is a non-intoxicating beverage, the sale of it furnishes extraordinary opportunities for the violation of the State prohibition law; that it is made by those who make beer, sold by those who sell beer, and drunk by those who drink beer, and that "it looks like beer, smells like beer and tastes like beer."

While these facts confer no power on municipalities to destroy or prohibit the business, they make it their undoubted duty to regulate and supervise it. The very possibilities which the business gives for palming off real beer and other intoxicating and

prohibited drinks places it properly under the guardianship and control of the police power.

Upon this idea it has been held that the State and, under its authority, the municipalities have the right to enact rules for the conduct of the most necessary and common occupations, when from their nature they afford peculiar opportunities for imposition and fraud. *Bazemore v. State,* 121 Ga., 620; Cooley Const. Lim. (7 Ed.), 887; *Turner v. Maryland,* 107 U. S., 41; *Powell v. Pennsylvania,* 127 U. S., 684.

In this last case the Supreme Court held that the possibility that the manufacture of oleomargerine or imitation butter is or may be conducted in such a way as to baffle ordinary inspection is a ground for strict regulation, under the police power of the State, although the oleomargerine may be properly manufactured and no menace to health. See, also, *Dairy Co. v. Ohio,* 183 U. S., 245, and *Plumley v. Massachusetts,* 158 U. S., 461.

One of the recognized methods of regulation is by license taxation, which will reduce the area and extent of the business, without annihilating it, and thus bring it more easily within municipal control, as well as provide funds for the expense the municipality incurs.

Tiedeman, in his Police Powers, p. 275, says: "The evils growing out of some occupations may be such that their suppression can only be attained to any appreciable degree by the imposing of a restraint upon the pursuit of such callings. For example, the keeping of saloons produces public evil in proportion to the number of low groggeries which are allowed to be opened; and in any event the evil is lessened by reducing the number of saloons of all grades of respectability. One of the most effective modes of restraining and limiting the number of saloons in any particular town or city is to require a heavy license of the keepers of them."

In *Insurance Co. v. Lewis,* 28 Montana, p. 490, the Court says: "No limitation is placed upon the purpose for which the license system may be employed, and it may be resorted to for the purpose of revenue, or for the purpose of regulation, or for both of such purposes, in the discretion and wisdom of the Legislature." See, also, *State v. Camp,* Sing., 328; L. R. A., 635.

It appears from this record that, in the city of Charlotte, regulation of this traffic by such means, as well as others, had become imperative. At the time of the passage of the ordinance there were three exclusive near-beer saloons and seventy other places where the drink was extensively sold, and it appears that these places were general headquarters for the vagrant element; that a great majority of the people who frequent them were idle and

immoral; that they require police supervision to keep order, and the chief of police of the city estimates that it will take two policemen for each saloon. And it further appears, from the testimony of the defendant himself, that some of those places were, in fact, engaged in selling real beer. Giving the ordinance the benefit of a presumption of reasonableness, we conclude that there are no facts contained in the record sufficient to overcome this presumption. We are confirmed in this conclusion by a statement made on the argument, and not denied, that there are now two near-beer saloons in Charlotte doing business in conformity to the ordinance.

4. As to the contention that the ordinance violates the Fourteenth Amendment of the Federal Constitution we need say but little. It has been long since settled that the Fourteenth Amendment, "broad and comprehensive as it is, was not designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations, to promote the health, peace and morals, education and good order of the people." *Barbier v. Connolly,* 113 N. S., 27; *In re Rahrer,* 140 U. S., 554.

Upon a review of the record, we are of opinion that there is
No error.