# CORPORATE ORGANIZATION & AUDIT COMPANY
## *v.* HODGES.

GIFT ENTERPRISE; ADVERTISING; ILLEGALITY OF CONTRACT.

1. A contract for advertising in a newspaper which is conducting a voting
   contest to increase its advertising, providing that merchants who
   advertise are to be given a thousand votes for each dollar expended
   for advertising, and they are to give their customers one vote for
   each 10-cent purchase; which votes are to be cast by the customer for
   any person he choses other than an advertiser, while the person
   receiving the highest number of votes is entitled to a prize given
   by the newspaper, constitutes a gift enterprise in violation of sec-
   tions 1176, 1177, of the Revised Statutes specially applicable to
   the District of Columbia, and therefore the publisher of the news-
   paper cannot enforce payment for the publication. · (Citing *Lans-
   burgh* v. *District of Columbia*, 11 App. D. C. 512; *Sheedy* v. *Dis-
   trict of Columbia*, 19 App. D. C. 280; *District of Columbia* v. *Kraft*,
   35 App. D. C. 253; *District of Columbia* v. *Gregory*, 35 App. D. C.
   271.)

2. The provision of section 1176 of the Revised Statutes specially ap-
   plicable to the District of Columbia which, after expressly repealing
   the Act of 1871 of the legislative assembly of the District licens-
   ing gift enterprises, expressly declares it unlawful "to engage in said
   business in any manner as defined in said act or otherwise," is not

NOTE.—Authorities discussing the question of legality of voting or popu-
larity contests are collated in a note in L.R.A.1917D, 489.

limited by the definition in that act, but the words, "or otherwise," cover a gift enterprise as generally defined.

No. 3082.   Submitted February 7, 1918.   Decided March 4, 1918.

HEARING on an appeal from a judgment of the Supreme Court of the District of Columbia in an action on a contract for advertising.                              *Affirmed.*

The COURT in the opinion stated the facts as follows:

The appellant, Corporate Organization & Audit Company, as assignee of Washington Herald Company, sued F. M. Hodges upon a contract for advertising in the Washington Herald. He admitted the contract, the publication of the advertisement called for by it, and his failure to pay for the publication; but defended on the ground that the contract arose out of a gift enterprise made unlawful by secs. 1176 and 1177, of the Revised Statutes specially applicable to the District of Columbia, and hence was unenforceable. The contract provides: "Please insert my display announcement to occupy a space of at least 25 lines (agate measure) in the Washington Herald, Mkt. Basket page for a term of twelve months from date of first insertion and thereafter until you receive a written order to discontinue, for which I agree to pay to your order the sum of $1.75 cents a line per issue. Bills payable monthly. One Thousand Votes in the Washington Herald Voting Contest for each Dollar expended for Advertising in the Herald during the life of said contest (including amount paid prior to the starting of said contest), are included without additional charge. It is understood that during the life of said contest, a line will be included in our advertisement stating that votes will be given in the contest. * * * The parts omitted are immaterial to the controversy.

This was supplemented by testimony on behalf of the appellant, plaintiff below, to the effect that the Herald was conducting a voting contest to increase its advertising, and gave to merchants who advertised with it a thousand votes for each dollar expended for advertising; which votes the merchants in

turn gave to their customers, "one with each 10-cent purchase." The customer could cast the votes "for himself or anyone he wishes," and the person receiving the highest number would receive a prize from the Herald. No advertiser was eligible as a contestant. The cost of advertising was not increased, and the price charged was reasonable.

Mr. H. Ralph Burton, Mr. George X. McLanahan, and Mr. William H. Boyd for the appellant.

No appearance for the appellee.

Mr. Chief Justice Smyth delivered the opinion of the Court:

It is argued that these facts, undisputed, do not disclose a gift enterprise within the meaning of the sections referred to. For the better understanding of these sections, we must refer to legislation which preceded their enactment. In 1871 the legislative assembly of this District passed an act imposing a license on gift enterprises as defined therein, thus recognizing their validity. Two years thereafter, or in 1873, Congress, being dissatisfied with this, enacted secs. 1176 and 1177, aforementioned. They are as follows:

"Sec. 1176. So much of the act of the legislative assembly of the District of Columbia * * * as authorizes gift enterprises therein, and licenses to be issued therefor, is disapproved and repealed, and hereafter it shall be unlawful for any person or persons to engage in said business in any manner as defined in said act or otherwise.

"Sec. 1177. Every person who shall in any manner engage in any gift enterprise business in the District shall, on conviction thereof in the police court, on information filed for and on behalf of the District, pay a fine not exceeding $1,000, or be imprisoned in the District jail not less than one nor more than six months, or both, in the discretion of the court."

The scope and effect, as well as the constitutionality of these sections, have been before this court and the Supreme Court of the United States. Lansburgh v. District of Columbia, 11

App. D. C. 512; *Sheedy* v. *District of Columbia,* 19 App. D. C. 280; *District of Columbia* v. *Kraft,* 35 App. D. C. 253, 30 L.R.A.(N.S.) 957; *District of Columbia* v. *Gregory,* 35 App. D. C. 271; *Re Gregory,* 219 U. S. 210, 55 L. ed. 184, 31 Sup. Ct. Rep. 143. In each of the cited cases, the sections were upheld as a proper exercise of the police power by Congress in this District.

In the *Lansburgh Case,* trading stamps were placed for a consideration in the hands of a limited number of merchants who distributed them among their customers in proportion to the amount of purchases made. Upon presenting a book containing not less than 990 stamps to the Trading Stamp Company, the customer obtained a prize. Of this he was certain. Here the Herald Company delivered the "votes" to the merchant, and he then delivered them to his customers, who might or might not receive a prize, depending (a) upon whether he was voted for, and (b) if voted for whether he received a sufficient number of votes. In the *Lansburgh Case* there was no necessary chance. If there was any chance, it was accidental. Yet not only the agent of the Trading Stamp Company, but also the merchant, was convicted, and the conviction sustained by this court, after a very careful review of the applicable law. Sheedy, in the case bearing his name, was a merchant who sold packages of cereal each of which contained a letter in red. A purchaser who found among the letters in his packages enough to spell the word "mothers" would, upon proper application, receive a prize from the manufacturer of the cereal. Sheedy was condemned. In the case before us, the one who, by the votes cast for him, becomes a winner, was given a prize by the Herald. What difference in principle is there between the acts held unlawful in the *Sheedy Case* and the scheme pursued by the Herald. The *Kraft* and *Gregory Cases* were somewhat different from the others in their facts, yet in substance the same, so this court held. All the aforementioned cases decided that the defendants were guilty of conducting a gift enterprise in violation of secs. 1176 and 1177.

Appellant seeks to distinguish those cases from the present one. It first points to the Legislative Act of 1871, which says

that any "person who shall sell or offer for sale any real estate or article of merchandise of any description whatever, or any ticket of admission to any exhibition or performance, * * * with the promise * * * to give or bestow * * * any article or thing," etc., shall be regarded as conducting "a gift enterprise;" and then to sec. 1176, which declares that "it shall be unlawful for any person or persons to engage in said business in any manner, as defined in said act or otherwise." Appellant urges that no one can be guilty of conducting a gift enterprise under the statute except in connection with a sale or offer of sale of real estate, articles of merchandise, or tickets of admission to a place of amusement; and then adds that the Herald Company was not engaged in any of these occupations. No, but the advertiser, to whom the votes were given, was, and he distributed them with the merchandise which he sold. This was a necessary part of the scheme and was made so by the Herald Company. It cannot be divorced from the part played by that company. When the company gave out the votes, it intended that the merchant advertiser should distribute them to his customers and thereby hold out "a promise of gift" of an "article or thing for and in consideration of the purchase" by the customer of an "other article or thing." Unless this was done the scheme would be abortive. The transaction, taken as a whole, clearly fell within the definition of a gift enterprise as outlined in the Act of 1871.

Even if it did not it would be unimportant, because the definition of sec. 1176 is not limited to that found in the act. The section says that it shall be unlawful for anyone to conduct a gift enterprise "in any manner as defined in said act *or otherwise.*" A gift enterprise as there outlined, or as otherwise—generally—defined, is prohibited. This is the view which the United States Supreme Court took of the matter in the *Gregory Case.* It said: "The purpose of the provision of sec. 1176 was to disapprove and repeal the former authorization, but not to establish an exclusive definition based upon it. The language of sec. 1176 conclusively negatives such an intention. It follows that sec. 1177 is not controlled by the definition to be found in the Act of 1871." In the *Gregory Case* the court

gives us one definition of such an enterprise. It said: "Thus a 'gift enterprise' has been defined to be 'a scheme for the division or distribution of certain articles of property, to be determined by chance, amongst those who have taken shares in the scheme.'" See also *State* v. *Shugart,* 138 Ala. 86, 91, 100 Am. St. Rep. 17, 35 So. 28; *Winston* v. *Beeson,* 135 N. C. 271, 279, 65 L.R.A. 167, 47 S. E. 457.)

The scheme before us did not limit the distribution of its prizes to those who took or received the shares,—the votes. Anyone but the advertiser could be a recipient, but that makes no essential difference. The plan was for the distribution of prizes—gifts—amongst those who by chance received the highest number of votes, and came within the definition given in the *Gregory Case.*

A gift enterprise is usually considered in the books as a species of lottery, and a lottery, according to a recognized authority, has these essential elements,—consideration, prize, and chance. 17 R. C. L. 1222. So has the instant scheme.

The Supreme Court of the United States in three cases (*Rast* v. *Van Deman & L. Co.* 240 U. S. 342, 60 L. ed. 679, L.R.A. 1917A, 421. 36 Sup. Ct. Rep. 370, Ann. Cas. 1917B, 455; *Tanner* v. *Little,* 240 U. S. 369, 60 L. ed. 691, 36 Sup. Ct. Rep. 379, and *Pitney* v. *Washington,* 240 U. S. 387, 60 L. ed. 703, 36 Sup. Ct. Rep. 385, respectively) had occasion to consider the vice which is obnoxious to legislation against gift enterprises. Florida and other States had imposed a tax upon any person who should offer, "with merchandise bargained and sold in the course of trade, any coupon, profit-sharing certificate, or other evidence of indebtedness or liability, redeemable in premiums," and provided a fine or imprisonment for failure to pay the tax and obtain a license. It was contended that this tax was not a proper exercise of the police power of the States. The Supreme Court of the United States in the cases just mentioned rejected the contention, and held that it was. Mr. Justice McKenna, speaking for the court in the *Rast Case,* said of the schemes covered by the statutes: "They rely upon something else than the article sold. They tempt by a promise of a value greater than that article and apparently not represented

in its price, and it hence may be thought that thus by an appeal to cupidity lure to improvidence. This may not be called in an exact sense a 'lottery,' may not be called 'gaming;' it may, however, be considered as having the seduction and evil of such." (p. 365.)  A scheme which contains this vice "is not," he continued, "protected from regulation or prohibition by the Constitution of the United States." (p. 368.)

Now, consider the case before us in the light of these observations. The Herald Company did not "rely upon the article sold." It "tempted by a promise of a value greater than that article, and apparently not represented in its price," and thus by an appeal to cupidity it might lure to improvidence. The scheme it projected "may not be called in an exact sense a lottery, may not be called gaming; it may, however, be considered as having the seduction and evil of such." The desire of the advertiser's customer to procure votes in order that he might vote for himself or some friend and win a prize might "lure to improvidence,"—to purchasing when he did not need. According to any of these definitions, the scheme was a gift enterprise.

It is urged that if the scheme is condemned, an athletic contest for a prize, or a contest for a Rhodes Scholarship, or one for the best breed of horses, or any like contest, must also be prohibited. Not at all. Such contests lack the vice which impel disapproval of an enterprise like the one in question. They have no tendency to "lure to improvidence;" they lack the seduction and evil of the other scheme. Instead they induce to efforts of great benefit and merit. *Brooklyn Daily Eagle* v. *Voorhies,* 181 Fed. 579, 582. This must be apparent upon the slightest consideration, and readily distinguishes them from the enterprise we are analyzing.

The contract in suit arises *ex turpi causa.* To enforce it would be to give effect to a thing condemned by the law, and this may not be done.

The judgment is affirmed, with costs.              *Affirmed.*