Decided 12 January, 1903.

**QUATSOE v. EGGLESTON.**

[71 Pac. 66.]

LOTTERY—ADVERTISING CONTRACT—ELEMENT OF CHANCE.

A contract between an advertiser and a retail merchant by which the latter, for a stated sum, is to be furnished with a number of tickets to distribute to his customers, and the advertiser is to provide a certain number of pianos to be exhibited at some conspicuous place, where votings shall be held at which the pianos shall be awarded to those receiving the greatest number of votes cast by persons who have obtained tickets through the retailer, is not a lottery, since it does not contain the element of chance. There is in this plan no opportunity to obtain a piano by lot, but it must go to the one receiving the most votes, which necessarily requires an exercise of the conscious will to a particular end.

From Multnomah: MELVIN C. GEORGE, Judge.

Action by F. L. Quatsoe and another, partners as the Manufacturers' Advertising Company, against W. H. Eggleston, on the following written contract, entered into between the plaintiffs and the defendant on May 29, 1901:

"To further advertise the Walworth pianos, manufactured by the M. Schulz Co., of Chicago, Ill., we, Quatsoe Bros., doing business as the Manufacturers' Advertising Co., of Chicago, Ill., hereinafter called the first party, agree to furnish three Walworth pianos to be given away as an advertisement. Said pianos will be awarded at the place of exhibition to the society, church, school, lodge, or person having secured the greatest number of votes at the close of each contest. One on June 15th, one on August 15th, and last one on October 15th, 1901. The first party agrees to furnish to W. H. Eggleston, hereinafter called the second party, five thousand (5,000) piano tickets, assorted denominations, two display cards, and pay for advertising the piano contest, giving result of vote and subscribers' names as follows: Weekly in the *Evening Telegram* until October 15, 1901.

"In consideration of the covenants and agreements herein expressed, to be kept and performed by the first party, the second party agrees to keep at all times displayed in a conspicuous place in his store the placards furnished by said first party, and give each and every one of his customers one piano ticket with each 25 cents of their cash purchase only. The second party further agrees to use tickets only in the manner above specified, and to pay to the first party the sum of fifty-two ($52) dollars when tickets are delivered, together with

vouchers for advertising, and a letter from C. A. Whale, of Portland, showing that three Walworth pianos have been paid for and will be delivered as above mentioned. This contract in duplicate contains the entire agreement of the parties herein.''

The following is indorsed on the back of the contract, and made a part thereof:

''This contract is taken upon the express condition that only $26 of the sum named in this contract shall be paid when tickets are delivered; balance, $26, to be paid after W. H. Eggleston has used $500 worth of tickets, and not to be paid until he has used that amount.''

The complaint alleges that the plaintiffs fully complied with all the terms and conditions of the contract on their part, but defendant refused to make the first payment as provided therein. The answer admits the execution of the contract, but alleges, as a defense to the action, a failure by the plaintiffs to perform certain of the conditions thereof, and that the contract was induced by fraud. The reply put in issue the new matter in the answer, and the trial resulted in a verdict in favor of the plaintiffs. Motions for a new trial, for judgment notwithstanding the verdict, and for judgment on the verdict were filed by the respective parties, but were each overruled by the court, and, on its own motion, the action was dismissed, because it appeared ''from the pleadings herein that the contract sued on by the plaintiffs is a lottery contract, and void.'' From this judgment the plaintiffs appeal.

REVERSED.

For appellants there was an oral argument by *Mr. Cicero M. Idleman,* with a brief over the names of *W. S. Hufford* and *C. M. Idleman,* to this effect:

I. Many definitions of a lottery have been given by lexicographers and judges, but in all of them the element of chance or hazard is necessary, and any distribution in which man's choice or will is effective is not a lottery: *United States* v. *Olney,* 1 Deady, 464; *State* v. *Boneil,* 42 La. Ann. 1110 (10 L. R. A. 60, 21 Am. St. 413, 8 So. 298); *People* v. *Elliott,* 74 Mich. 264 (3 L. R. A. 403, 16 Am. St. 640, 41 N. W. 916);

*Fleming* v. *Nevill,* 3 Or. 263, 268; Bishop, Stat. Cr. § 952; *Ex parte Kameta,* 36 Or. 251 (60 Pac. 394, 78 Am. St. Rep. 775); *People* v. *Reilly,* 50 Mich. 384 (15 N. W. 520, 45 Am. Rep. 47); *People* v. *Noelke,* 94 N. Y. 137 (46 Am. Rep. 128); *Wilkinson* v. *Gill,* 74 N. Y. 63 (30 Am. Rep. 264).

II. Chance or lot is as necessary an ingredient of a lottery as light is of day or darkness of night, and unless the prizes are distributed by lot, and this appears in the contract itself, it should not have been declared a lottery contract: *Hull v. Ruggles,* 56 N. Y. 424; *Cross* v. *People,* 18 Colo. 321 (32 Pac. 821, 36 Am. St. Rep. 292).

III. Two things must concur in order to constitute a lottery, and these, in this case, must have appeared in the contract, else the court erred in dismissing the plaintiffs' cause of action: *first,* there must be a consideration paid for the ticket or chance to draw; *second,* there must be a distribution of the prize by lot or chance: Bishop, Stat. Cr. § 952; *State* v. *Shorts,* 32 N. J. L. 398 (90 Am. Dec. 668); *Solomon* v. *State,* 28 Ala. 83; *Lood* v. *State,* 44 Ala. 406; *Boyd* v. *State,* 61 Ala. 177; *Buckalew* v. *State,* 62 Ala. 334 (34 Am. Rep. 22); *Johnson* v. *State,* 83 Ala. 65 (3 So. 790); *Kohn* v. *Kohler,* 96 N. Y. 362 (48 Am. Rep. 628); *Commonwealth* v. *Wright,* 137 Mass. 250 (50 Am. Rep. 306); *United States* v. *Wallis,* 58 Fed. 942; *Cross* v. *People,* 18 Colo. 321 (32 Pac. 821, 36 Am. St. Rep. 292); *United States* v. *Olney,* 1 Deady, 461; *Yellowstone Kit* v. *State,* 88 Ala. 196 (16 Am. St. Rep. 38, 7 L. R. A. 599).

For respondent there was an oral argument by *Mr. John P. Kavanaugh* and *Mr. A. King Wilson,* with a brief over the name of *Mr. Kavanaugh,* to this effect:

I. All the essential elements of a lottery are contained in this contract—the tickets, the prizes, and the drawing of them by chance: *United States* v. *Wallis,* 58 Fed. 942; *People* v. *Elliott,* 74 *Mich.* 264 (3 L. R. A. 403, 16 Am. St. Rep. 640, 41 N. W. 916).

II. Subterfuges and devices resorted to for the purpose of evading the laws for the suppression of lottery schemes are strictly construed: 13 Am. & Eng. Enc. Law (1 ed.), 1178;

*Dunn* v. *People,* 40 Ill. 465; *Hull* v. *Ruggles,* 26 N. Y. 424; *Horner* v. *United States,* 147 U. S. 449, overruling *Kohn* v. *Kohler,* 96 N. Y. 362.

III. Any plan of distribution where it is apparent that some of the purchasers will fail to receive prizes is sufficient: *Thomas* v. *People,* 59 Ill. 160.

MR. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

The setting up, promoting, or conducting a lottery is not only a species of gaming, immoral and vicious *per se,* but is prohibited by the constitution, article XV, section 4, and made a crime by statute (B. & C. Comp. § 1959). The court was therefore not in error in dismissing the action *sua sponte,* if the agreement set out in the complaint, and upon which it is based, is in fact a lottery contract. To this question we shall direct our attention. The term "lottery" has no technical legal meaning, but the courts adopt the generally accepted definition in popular use. Webster says that it is "a scheme for the distribution of prizes by lot or chance; *esp.,* a gaming scheme in which one or more tickets bearing particular numbers draw prizes, and the rest of the tickets are blanks." By the Standard Dictionary it is defined as "a scheme for distributing prizes by chance or lot, where a valuable consideration is given for the chance of drawing a prize, especially where such chances are allotted by sale of tickets;" and the Century, as "a scheme for raising money by selling chances to shares in a distribution of prizes; more specifically, a scheme for the distribution of prizes by chance among persons purchasing tickets, the correspondingly numbered slips, or lots, representing prizes or blanks, being drawn * * . In law, the term lottery embraces all schemes for the distribution of prizes by chance, such as policy-playing, gift-exhibitions, prize-concerts, raffles at fairs, etc., and includes various forms of gambling." Practically the same definition is given by the legal authorities. Thus, in 14 Am. & Eng. Enc. Law (2 ed.), 600, it is defined as "a gambling contract in which one or more parties on

the one side risk a small sum for the chance of obtaining a greater, the winner or winners to be determined by lot;" and in the nineteenth volume of the same work, at page 588, as "a scheme for the distribution of prizes by lot or chance; a game of hazard in which small sums of money are ventured for the ·chance of obtaining a larger value, in money or other articles." Mr. Bishop says it is "any scheme whereby one, on paying money or other valuable thing to another, becomes entitled to receive from him such a return in value, or nothing, as some formula of chance may determine: Bishop, Stat. Cr. (2 ed.) § 952. Mr. Chief Justice SHERWOOD defines it as "a scheme by which a result is reached by some action or means taken, and in which result man's choice or will has no part, nor can · human reason, foresight, sagacity, or design enable him to know or determine such result until the same has been accomplished": People v. Elliott, 74 Mich. 264, 267 (41 N. W. 916, 3 L. R. A. 403, 16 Am. St. Rep. 640). Definitions of similar import could be given indefinitely, as the books are full of them, but those quoted are sufficient for the present purpose, and show that any scheme for the distribution of property by lot or chance is a lottery, whatever form it may take, or however ingeniously its real object may be concealed. As illustrating how zealous the courts are to condemn any scheme that is in effect a lottery, and as showing what have been held to be such, reference may be made to 19 Am. & Eng. Enc. Law (2 ed.) 590; Meyer v. State, 112 Ga. 20 (37 S. E. 96, 51 L. R. A. 496, 81 Am. St. Rep. 17); Hudelson v. State, 94 Ind. 426 (48 Am. Rep. 171); Thomas v. People, 59 Ill. 160; State v. Shorts, 32 N. J. Law, 398 (90 Am. Dec. 668); Holoman v. State, 2 Tex. App. 610 (28 Am. Rep. 439); State v. Lumsden, 89 N. C. 572; United States v. Wallis (D. C.) 58 Fed. 942; Hull v. Ruggles, 56 N. Y. 424; United States v. Olney, 1 Deady, 461 (Fed. Cas. No. 15,918); State v. Boneil, 42 La. Ann. 1110 (8 So. 298, 10 L. R. A. 60, 21 Am. St. Rep. 413); Dunn v. People, 40 Ill. 465; Horner v. United States, 147 U. S. 449 (13 Sup. Ct. 409); Wilkinson v. Gill, 74 N. Y. 63 (30 Am. Rep. 264); Commonwealth v. Wright, 137 Mass. 250 (50 Am.

Rep. 306) ; *United States* v. *Fulkerson* (D. C.) 74 Fed. 619 ; *State* v. *Moren,* 18 Minn. 555 (51 N. W. 618).

In all these cases, as well as in the definitions to be found in the books, it will be observed that one essential ingredient of a lottery is the element of chance, by which some prize or other thing of value in excess of that paid for by the purchaser is distributed to the holder of a ticket or other designated person by some means, the result of which human foresight or sagacity cannot foretell. "This ingredient of chance," says Mr. Chief Justice BEASLEY, in *State* v. *Shorts,* 32 N. J. Law, 398 (90 Am. Dec. 668), "is, obviously, the evil principle against which all prohibitory laws are aimed. It is by this means that cupidity is solicited, for, if fortune be propitious, in consideration of the trivial price of a ticket, a return of value is to be expected." There cannot, therefore, be a lottery without this element of uncertainty or chance. If the power of reason or will is exercised upon the selection, then there is no lottery. Now, when the contract under consideration is examined, the element of pure chance is found wanting. The awarding of the pianos, which are proposed to be given away as an advertisement, is not made by chance or lot, but by the affirmative, conscious act and will of the holders of tickets obtained with goods purchased at the defendant's store. By the contract, the plaintiffs agreed to furnish the defendant 5,000 tickets, in assorted denominations, two display cards, and pay for advertising the piano contest, giving the result of the vote and the subscribers' names for a certain specified time, in consideration of which the defendant agreed to pay to them a certain amount of money, to keep these placards on exhibition in his store, and to give to each and every one of his customers one ticket with each 25-cent cash purchase, which ticket entitled the holder to a vote in determining to whom the pianos should be awarded. By the arrangement, each purchaser of goods of a certain value obtained a ticket, which simply entitled him to the right to vote in the contest, but by no possibility could he obtain a piano merely as a holder of such ticket, or of any number of tickets, on account of these purchases. The pianos

were not to be given to the holders of tickets alone, but "to the society, church, school, lodge, or person having secured the greatest number of votes at the close of each contest," whether holding a ticket or not; so that the holder of a ticket, or of any number of tickets, as such, stood no more chance to obtain the gift than one who had not traded at defendant's store and held no ticket at all. The pianos were not to be distributed among the ticket holders by schemes or lots, or to the persons holding the greatest number of tickets, but the award depended upon the result of the vote. There was, therefore, no awarding of the prizes by lot or chance, and no appeal to the cupidity of any one, nor inducement to make reckless purchases in the hope of securing some prize superior in value to the amount invested. The contract, therefore, does not come within any of the accepted definitions of a lottery, nor within the scope of the evil intended to be suppressed by the prohibition thereof. It follows from these views that the circuit court was in error, and that the judgment appealed from must be reversed, and the cause remanded for such further proceedings as may be proper, not inconsistent with this opinion.          REVERSED.

Decided 12 January; rehearing denied 16 February, 1903.