## Commonwealth v. Jenkins.

(Decided May 19, 1914.)

### Appeal from Crittenden Circuit Court.

Lotteries—Criminal Responsibility—Offenses.—A popularity contest inaugurated by a newspaper publisher whereby persons paying for subscriptions or advertising, received ballots in proportion to the amount paid; and participating merchants bought from such publisher and gave to their customers ballots with their

purchases, the persons receiving the highest number of votes to receive an automobile—is not within the purview of the statute denouncing lotteries.

JAMES GARNETT, Attorney General, OVERTON S. HOGAN, Assistant Attorney General, for appellant.

J. W. BLUE, JR., for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

Appellee was indicted at the March term, 1912, of the Crittenden Circuit Court, for the crime of promoting a lottery, denounced by section 2573, Kentucky Statutes. the indictment being, in part, in the following language:

"The said S. M. Jenkins, in the said county of Crittenden, on the first day of December, 1911, and before the finding of this indictment, did unlawfully, wickedly and feloniously set up, carry on, conduct, manage, operate, draw and otherwise promote a lottery and gift enterprise, whereby money and other thing of value was, and was pretended to be disposed of, a further and better description of which said lottery and gift enterprise is to the grand jury unknown; and said S. M. Jenkins did sell, barter, exchange, dispose of, furnish, supply, procure and cause to be supplied and procured, to various and divers persons to the grand jury unknown, certain tickets and writings, shares, parts of tickets, certificates, tokens and devices purporting, designed and intended to give and entitle the holder to money and to a prize, share and interest in a prize in money and property of value, in a lottery and gift enterprise whereby money and other thing of value was, and was pretended to be disposed of, etc."

Upon a trial, the lower court, after hearing the evidence introduced by the Commonwealth, peremptorily instructed the jury to find the defendant not guilty. The Commonwealth appeals, and asks a certification of the law of the case.

It is shown in evidence that defendant was the editor and proprietor of a newspaper, the Crittenden Record-Press, published at Marion; that he inaugurated a scheme commonly called a "popularity contest" whereby it was announced that persons paying for subscriptions to the newspaper, or for advertising therein, were to be given a certain number of votes for each dollar so paid, and the holder of such votes had the privilege of naming

a candidate, and of casting these votes for such condidate, or for one already named; and the candidate obtaining the largest number of votes was to receive a Howard Automobile, worth sixteen hundred dollars.

In addition to the votes given out by the defendant when payments were made of subscriptions or for advertising, the defendant also arranged with certain merchants of Marion, to purchase of him, and give to their customers, votes in this contest; no such merchant, however, to have the privilege of casting any of the votes so purchased, for himself or any member of his family; nor could the defendant himself, nor any of the participating merchants, nor any member of their families be a contestant, or receive votes therein. These merchants gave out the votes so purchased from defendant to their customers in proportion to the amount of goods purchased, the merchants paying to the defendant for the votes so bought by them from him and given away to their customers three cents for each dollar's worth of goods sold by them.

It was also shown in evidence that the defendant and one Guess entered into a contract by which defendant agreed that if Guess would pay him four hundred dollars for a four hundred years' subscription to the newspaper published by defendant, Guess should receive a Ford automobile—not the automobile offered as a prize in the "Popularity Contest." Guess took the four hundred years subscription to the paper; paid for same, and cast the votes (just how many is not shown), for his wife. She received the highest number of votes cast in the contest, and received the Ford car. It was further shown that while the price of the Howard automobile was sixteen hundred dollars, that of the Ford was but five hundred and fifty dollars; and that defendant still has the Howard car.

We have been directed to no authority holding that transactions like this "Popularity Contest" fall within the denunciation of the statute against lotteries. Every person who parted with money in such contest received a subscription to the newspaper, or merchandise from the merchant from whom he received the votes entitled to be cast in the contest. Neither the price of subscription to the newspaper, advertising therein, nor of the goods sold by the participating merchants was advanced by reason of the scheme; and presumably when such person subscribed for the newspaper, or purchased goods

from one of the participating merchants, he got his money's worth.

If, for the purpose of increasing the number of his subscribers, and thereby enhancing the value of his advertising space, the publisher of a newspaper is willing to give away to such person or persons as his subscribers may choose, an article of value, if the price of such subscription or of the goods sold by participating merchants is not advanced, we see nothing unlawful in such act. It is manifest that such a contest is not a lottery within the meaning of the statute.

A lottery is defined by Webster as a scheme by which one or more prizes are distributed by chance among persons who have paid or promised a consideration for the chance to win them. And, in 25 Cyc., 1633, it is said that "A lottery is a species of gambling which may be defined as a scheme for the distribution of prizes by chance among persons who have paid or agreed to pay a valuable consideration for the chance to obtain a prize."

The weight of authority is that the issual of trading stamps to purchasers of goods, entitling the latter to articles on exhibition at the store of the trading stamp company, is not a lottery. 25 Cyc., 1640. The trading stamp scheme is one by which the trading stamp company sells coupons to merchants at the rate of about three or four dollars for the number of coupons which the merchants gives away with each one hundred dollars' worth of merchandise purchased from him. These coupons are redeemable at the place of business of the trading stamp company in cash or merchandise.

In the "Popularity Contest" in the case at bar, the votes which correspond to these trading stamp coupons, were not redeemable in merchandise by the holder, but could be voted by the holder for the person of his choice, and under the scheme as proposed, the person receiving the highest number of votes, was to receive the automobile.

The object is to increase and stimulate trade in a legitimate article of commerce. The prize is not necessarily to a ballot holder. Some person may receive the prize who never subscribed for the newspaper nor bought any merchandise from the participating merchants. The prize is supposed to go, not to the person holding the greatest number of ballots, but to that person for whom the greatest number of votes are cast. There is no

awarding of prizes by lot or chance. Quatsoe v. Eggleston, 42 Oreg., 315.

It is suggested by counsel for appellant that the transaction between defendant and the witness, Guess, "smacks to some extent of a lottery." Counsel for defendant argues that this agreement eliminated every element of chance. And with the latter we are inclined to agree. Under the arrangement between the defendant and Guess, the whole scheme became a game of "no chance" rather than one "of chance." All of the candidates except Mrs. Guess stood "no chance" to win; while she stood "no chance" to lose.

With the morality of the transactions mentioned we have no concern; but it is manifest that under the evidence, there was shown no violation of the statute denouncing lotteries; and the lower court properly directed the jury to find the defendant not guilty.

Judgment affirmed.

Judge Nunn not sitting.