BREVARD MANUFACTURING COMPANY v. W. BENJAMIN & SONS.

(Filed 20 September, 1916.)

**1. Lotteries—Gift Enterprises—Statutes.**

A trade enlargement or expansion scheme which selects "contestants" to boost business for merchants, giving them prizes to engage in the movement, and tickets or books, in accordance with purchases by customers they may influence, with intermediate votes for prizes or gifts, and at the termination of the movement certain votes for an ultimate prize or gift, is a gift enterprise coming within the intent of the statute. Revisal, sec. 3726.

**2. Same—Police Powers—Constitutional Law.**

The regulation of lotteries or gift enterprises is within the police powers of the State, and Revisal, sec. 3726, is constitutional and valid.

**3. Bills and Notes—Illegal Consideration—Lotteries—Gift Enterprises—Statutes—Actions.**

Notes given in pursuance of a contract prohibited by Revisal, sec. 3726, are for an illegal consideration, and collection thereof is not enforcible in our courts.

CLARK, C. J., dissenting.

CIVIL ACTION tried before *Whedbee, J.,* at July Special Term, 1916, of EDGECOMBE, upon appeal by the plaintiff of two causes from justice's court, which, by agreement, were consolidated and a single answer filed thereto. A jury was waived and trial by the court substituted. The court rendered judgment upon the admitted facts and evidence for defendants. The plaintiff appealed.

*A. W. MacNair for plaintiff.*
*James M. Norfleet for defendant.*

BROWN, J. This action is brought to recover on certain notes executed by defendants to plaintiff. The defendants plead illegality of consideration in that said notes were given for the sole purpose of carrying out a certain agreement entered into between plaintiff and defendants, which is called the plaintiff's "Trade Expansion Campaign."

The defendants aver that the said scheme is in fact a lottery or gift enterprise in violation of section 3726, Revisal, as follows: "If any person shall open, set on foot, carry on, promote, make or draw, publicly or privately, a lottery, by whatever name, style, or title the same may be denominated or known; or if any person, by such way and means, expose or set to sale any house or houses, real estate, or any goods or chattels, cash, or written evidence of debt, or certificates of claims, or anything of value whatsoever, every person so offending shall be guilty of a misdemeanor, and be fined not exceeding $2,000, or imprisoned not exceeding six months, or both, in the discretion of the court. Any person who engages in disposing of any species of property whatsoever, money or evidences of debt, or in any manner distributes gifts or prizes upon tickets or certificates sold for that purpose, shall be held liable to prosecution under this section."

The facts appear to be undisputed, and are substantially these: The plaintiffs reside in Iowa and are engaged in a business claimed by them to be a copyrighted advertising scheme, and called a "Trade Extension Campaign." The defendants are merchants engaged in business in Tarboro, N. C. The defendants' business was estimated at $30,000 per annum, and plaintiffs by their plan agreed to increase this business 20 per cent upon the defendants executing the contract set out in record and making their negotiable notes in the aggregate of $340, and in case of partial failure in securing said increase there was to be proportionate rebate on amount of notes.

The defendants were to furnish plaintiffs with the names of one hundred and fifty women, who were to be known thereafter as contestants for the prizes offered and later described. The plaintiffs were to notify contestants of their appointment, and the first sixty accepting were to be rewarded with the gift of a "Queen Esther Spoon." Each of the one hundred and fifty were to be given a white coupon free to the value of $10 ordinary coupons. Each of the one hundred and fifty in return was expected to drum up trade among their friends and acquaintances to purchase from defendants, and such purchaser either for cash or payment on account would be given certain tickets, which varied with amount of cash paid. These tickets were delivered to favored contestant or deposited to her credit by purchaser. There were also red tickets for special sales which had an extra value. There were coupon books each of value of $5 which could be bought for cash, and amount paid for said books was placed to credit of purchaser, to be traded then or later at his convenience, but the coupons in said book could be voted at any contest by the woman contestant to whom same was delivered. Also there was a card of value of $2.50 to be punched on margin, which, in addition, was worth $1 to holder for the purchase of any article enumerated on back of same by paying the difference between such value and

list price, which ran from 3 cents to $1.55. A book of instructions was also sent by plaintiffs, which contained the rules of contest.

This "Trade Extension Campaign" was to extend over a period of six months. On Wednesday of each week a piece of silver was given the contestant having the largest number of coupons deposited, and such tickets could be voted in no further weekly contest, and as to them were worthless. Once a month a watch was delivered to the contestant having the largest number of coupons deposited, and all tickets so deposited were worthless at any subsequent monthly drawing. At the end of six months the contestant having the largest number of coupons deposited for the entire campaign received the grand prize of the Grafanola; then the campaign was closed, and all coupons were worthless in the hands of all except the fortunate winners at the weekly, monthly, and final contests. This is a concise statement of the scheme as disclosed by the evidence.

The defendants made the notes and executed the contract and received the various articles to be offered as prizes described in contract.

Awaiting the coming of plaintiff's representative, who was to open the campaign, the prizes were displayed in defendants' show windows, when they were advised by the county solicitor if they went forward with this plan they would be indicted for conducting a lottery. Defendants at once advised plaintiff of the situation, and offered to return prizes and cancel contract, which offer they have kept good to date, but plaintiff refused to accept offer, and demanded that contract be carried out.

His Honor held upon all the evidence that the scheme came within the purview of section 3726 of the Revisal as a gift enterprise, that the consideration for the notes was illegal, and that plaintiff cannot recover.

It is immaterial whether this scheme to enlarge defendants' business is a lottery or a gift enterprise, as both are prohibited by the law. We concur with the judge that the scheme falls under the denunciation of the statute, and, therefore, the consideration for the notes is illegal, and plaintiff cannot recover.

Schemes of this character are so numerous that it would tax the ingenuity of man to define with accuracy and to draw the line clearly between those which are devised to evade the laws made for the protection of an unwary public and those which are *bona fide* and harmless methods of advertising a legitimate business.

That legislation of this character is well within the police power of the State is too well settled to need discussion. *Rast v. VanDemon,* 240 U. S., 342; *Tanner v. Little,* 240 U. S., 369.

The plaintiff has sought for the protection of its scheme the sanctuary to which most such enterprises flee when their legality is assailed, viz.,

that it is an innocent and harmless method of advertising legitimate business. We think it is much more. The language of the Supreme Court of the United States aptly draws the distinction and is peculiarly applicable to this case.

*Mr. Justice McKenna* in the *Rast case, supra,* says: "Advertising is merely identification and description, apprising of quality and place. It has no other object than to draw attention to the article to be sold, and the acquisition of the article to be sold constitutes the only inducement to its purchase. The matter is simple, single in its purpose and motive, and its consequences are well defined, there being nothing ulterior. It is the practice of old and familiar transactions, and has sufficed for their success. The schemes of complainants have no such directness and effect. They rely upon something else than the article sold. They tempt by a promise of a value greater than that article, and apparently not represented in its price, and hence it may be thought thus, by an appeal to cupidity, to lure to improvidence. This may not be called in an exact sense a 'lottery,' may not be called 'gaming'; it may, however, be considered as having the seduction of evil of such."

The statute since its adoption, Code, sec. 1047, has been enlarged in its scope by the addition of the last paragraph, evidently intended to prohibit gift enterprises of any character. We think the plaintiff's so-called "Trade Expansion" plan comes within its terms. The courts in construing remedial statutes affecting lotteries, gift enterprises, or other schemes, by whatever name called, for disposing of goods and merchandise by unusual methods, will construe them with reference to the mischief intended to be redressed.

The facts of this case bring it within the scope of the opinion in *S. v. Lipkin,* 169 N. C., 265, where this subject is fully discussed by *Justice Walker.*

It appears to us to be one of those schemes "by which persons are induced to buy what they do not want in the hope or expectation or upon the hazard of getting something else as a gratuity which it might turn out they did want, but the exact character of which they do not at the time know." *Commonwealth v. Emerson,* 165 Mass., 146; *Winston v. Beeson,* 135 N. C., 281.

This last case seems to be relied upon by plaintiffs to support their contention, but we fail to see the relevancy. The only question presented in that case was the power of the city of Winston to tax dealers in trading stamps, and it was held that they did not come within the provision of an ordinance taxing gift enterprises.

Under the trading stamp scheme there was no lot or chance. Each stamp had a value, and could be traded off for articles of many kinds. Here there are weekly, monthly, and final drawings, and only a limited number could win, and however strenuous the labors of the losers, they

MANUFACTURING CO. *v.* BENJAMIN.

received nothing and their tickets were worthless. Hardly any scheme could be devised to stir up more strife and ill-feeling in a small community.

The judgment of the Superior Court is

Affirmed.

CLARK, C. J., dissenting: The scheme presented by this appeal is almost identical with the well known method heretofore adopted by many newspapers of the State in order to increase their circulation, and without objection up to this time from any source. It would seem that the plan is neither a lottery nor a gift enterprise. The mere fact that merchandise is to be given away, or disposed of upon certain conditions, does not make it either a lottery or a gift enterprise within the purview of the statute. The courts have laid down the rule that to make a lottery there must be an element of chance, in winning a greater prize or of winning nothing and losing the purchase price of the chance. Also, that there must be a consideration paid for the chance to participate in the distribution of the prizes. *S. v. Lumsden,* 89 N. C., 572; *Winston v. Beeson,* 135 N. C., 271.

Here there is no element of chance, nor is there any fee charged for participating in the contest. The prizes are awarded according to the number of votes cast. There is no drawing, no throwing of lots, nor any distribution of prizes, "which human reason, foresight, sagacity, or design cannot enable any one to know or determine until same has been accomplished." *People v. Elliott,* 2 L. R. A., 403. The awards are to be made solely by the number of votes cast for the several contestants. The one who works hardest and sends the largest volume of business to the defendant's store will certainly win the prize. It is merely a question of the hardest work, the exercise of the greatest influence, and the possession of the largest degree of skill.

When the contest is determined by skill, energy, and judgment there is no lottery, even though an entrance fee is charged the contestants. 25 Cyc., 1635; 19 A. and E., 589. This distribution is dependent entirely on effort and judgment. Chance is completely eliminated and no consideration is charged either directly or indirectly to any one. The manner of distributing the prizes to the more popular contestants is like a public election, and no more a lottery than such elections, whose results, often uncertain, are not lotteries in the legal sense of that word. If this is a lottery, then every election is a lottery wherever there are two or more candidates.

In *S. v. Lipkin,* 169 N. C., 265, the proposition was entirely different from this. In that case there was an element of chance, the award being thereby determined and a consideration had to be paid.

It is also urged that this is a gift enterprise denounced by the statute. A gift enterprise is defined by the decisions as a scheme for the division of certain articles of property determined by chance among those who take shares in the scheme. *Winston v. Beeson, supra.* There is nothing in this scheme that savors of a gift enterprise. The fact that coupons, pamphlets, and the like are used for the purpose of the campaign does not conclusively establish that this is a lottery or a gift enterprise. It is a proposition for the extension of the business of the plaintiff by the methods proposed which do not constitute either a gift enterprise or a lottery, for the reason already stated, that there is no element of chance and that no consideration is paid for the opportunity to participate in the distribution of the prizes. The result is obtained simply by an election, the party getting the most votes receiving the prizes according to the schedule set out. The consideration to the plaintiff, as in the almost identical method used in the familiar newspaper contests, is the enlargement of its business by the advertisement obtained and the interest aroused by the election contest. It is simply the application of election methods to business. There is no chance, and no gift enterprise, unless the ordinary election contest for office can come under one of those heads.