Submitted on brief January 30, reversed and remanded February 13, 1917.

## NATIONAL SALES CO. *v.* MANCIET.

(162 Pac. 1055.)

**Lotteries—Element of Chance—"Lottery."**

1. A scheme by which a merchant, on *selling merchandise at regular prices,* issues to purchasers ballots entitling them to express their choice a certain number of times, according to the price of articles bought, in favor of any person competing for prizes to be given to the persons receiving or holding the greatest number of votes, is not a "lottery," not involving an element of chance.

**Guaranty—Distinguished from Other Contracts.**

2. Stipulation of plaintiff's contract for furnishing defendant merchants with prizes and votes therefor to be given customers, that if defendants' business for the succeeding year was not a certain amount plaintiff would pay them the deficiency in cash, though designated therein a "guaranty" of sales, is not properly a guaranty; it

not containing a promise to answer for the debt, default, or mis-carriage of another.

[As to the contract of guaranty, see note in 105 **Am. St. Rep.** 502.]

**Principal and Surety—Contract of "Suretyship."**

3. Provision of contract, by which plaintiff sells to defendant merchants prizes and a voting outfit, that if their sales are not a certain amount the succeeding year it will pay them the deficiency in cash, does not create a "suretyship" between the parties; the obligation not being secondary and successive, as distinguished from a liability which is joint and equal.

**Insurance—Commercial Insurance.**

4. Provision of a contract, by which plaintiff sells defendant merchants prizes and a voting outfit, that if their business is not a certain amount the succeeding year it will pay them the deficiency in cash, may be classed as a species of commercial insurance.

**Corporations—Defense of Ultra Vires.**

5. The contract, under which defendants received goods of plaintiff corporation, not trenching on public policy nor violating any express legislative enactment, they interposing the defense that it was *ultra vires,* the corporation should be required to return the goods or pay their reasonable value.

From Coos: GEORGE F. SKIPWORTH, Judge.

In Banc.    Statement by MR. JUSTICE MOORE.

This is an action by the National Sales Company against H. Manciet and George Manciet to recover money. The complaint substantially alleges: That the plaintiff is a corporation organized under the laws of Oregon. That on July 1, 1914, the defendants exe-cuted to the plaintiff their promissory note, of which the following is a copy:

"P. O. Bandon, State Ore.
"Date 7—1, 1914.

"For value received the undersigned promises to pay at Portland, Ore., to the order of the National Sales Co., four hundred and 00/100 dollars as follows: $100 two months after date; $100 three months after date; $100 four months after date; $100 five months after date. Nonpayment of any installment for more

than thirty days after maturity renders the remaining installments due at the holder's option.

"H. MANCIET,

"GEO. MANCIET."

That no part of the note has been paid. That the first installment thereof matured September 1, 1914. That on October 1st of that year, when the second partial payment became due, the plaintiff elected to treat the remaining installments as then payable. Judgment was demanded for $100 with interest from September 1, 1914, and for $300 with interest from the first of the following month.

The answer as far as material herein denies each averment of the complaint, except as admitted or qualified, and for a further defense alleges that the plaintiff was incorporated solely "to engage in and conduct a wholesale establishment or establishments, to buy, sell, import, export, manufacture and generally deal in goods, wares and merchandise of every class, nature, and description"; that the defendants are merchants at Bandon, Oregon, engaged in retailing candy, tobacco and cigars; that the only writing to which they subscribed their names purported to be a contract the provisions of which are beyond the plaintiff's powers, illegal and void, setting forth the facts which it is claimed make the agreement *ultra vires*.

The reply denied the averments of new matter in the answer and alleged:

"That defendants are and ought to be estopped to deny the power and authority of plaintiff to enter into said contract by reason of the fact that said defendants were and are voluntary parties to the said contract to which plaintiff was also a party."

At the trial of the cause counsel for the respective parties moved for a directed verdict after all the testi-

mony had been received.   The defendants' request was
granted, whereupon a verdict was returned as ordered,
and, judgment having been rendered thereon, the plain-
tiff appeals.

Submitted on brief without argument under the pro-
viso of Supreme Court Rule 18: 56 Or. 622 (117 Pac.
xi).                          REVERSED AND REMANDED.

For appellant there was a brief by *Mr. Harry G.
Hoy.*

For respondents there was a brief by *Mr. George P.
Topping.*

MR. JUSTICE MOORE delivered the opinion of the
court.

The evidence shows that the defendants on July 1,
1914, signed a printed and written order addressed to
the plaintiff, requesting it to ship to them 5,000 ballots
for a voting contest; 2,000 trade duebills to be sold by
candidates, and other printed matter; 2 certificates
each good for a round trip by rail from Bandon, Ore-
gon, to San Francisco, California, and return, includ-
ing side trips from the latter city; 7 grand awards
consisting of pieces of plated silver and plated nickel-
ware; 10 smaller prizes of similar ware to be awarded
weekly to the leaders of the campaign; and of plated
silverware "three dozen teaspoons, one half-dozen to
be given the leader of the following six weeks of the
campaign."   The writing contained the following
clauses:

"All to be included in the purchase price of $400
f. o. b. transportation company.   Terms: 5 per cent 10
days, net cash 60 days.   By special agreement the
above can be paid in four installments of $100 each in
2, 3, 4 and 5 months, if the detachable note below prop-

erly signed accompanies this order. In consideration
of the expense in preparing printed matter, shipping
goods, and special terms of payment, purchaser agrees
not to rescind this order, but to stand as given on the
day and date hereof. Purchaser (the defendants) rep-
resents his sales preceding twelve months were $9,600.
Next twelve months you (the plaintiff) hereby guar-
antee sales to be $12,000, or if 3.33 per cent of said sales
does not amount to the purchase price, you hereby
agree to pay the purchaser the deficiency in cash. You
also agree to send your bond in the sum of $1,000 to
cover this agreement. To make this agreement binding
purchaser agrees to take shipment promptly, carry out
campaign plan fully, promptly meet all obligations en-
tered into by this agreement, keep award well dis-
played in store, report gross sales each thirty days and
promptly furnish all information requested to assist in
pushing this campaign.

"7—1, 1914.

> "National Sales Co.,
>  "By N. J. Sand,
>   "Salesman.
>  "[Signed]  H. Manciet,
>   "By H. Manciet,

"Freight Station Bandon.
"Express Station Bandon, State Ore.
""The attached note is tendered in settlement for
above contract and goods; if acceptable to the com-
pany, they will detach same when order is accepted,
otherwise return."

Following the language last quoted, a perforated line
was indented across the paper, below which originally
was the promissory note hereinbefore set forth.

The defendant H. Manciet, referring to the plaintiff,
testified as follows:

"They agreed to increase our sales a certain per
cent and sent down some silverware and tickets, etc., to
enter into the contest business."

George Manciet, also alluding to the plaintiff, to its scheme for increasing defendants' sale of merchandise, and to the reason for not discharging the note, stated upon oath: "I didn't pay them because it wasn't doing us any good." Whether the plaintiff furnished the specified certificates for transportation or all the plated ware or the entire printed matter indicated is not disclosed by the testimony. Nor does it appear from the transcript before us how the voting contest was to have been conducted or the prizes awarded. It will be assumed, however, that upon a sale of any merchandise at regular prices by the defendants they issued to the purchaser ballots representing the sum of money so paid for goods, which tickets had a supposed value and entitled the holder to express his choice a certain number of times, depending upon the adopted unit of value, in favor of any person competing for a prize, and that the party receiving or holding the greatest number of votes for any premium was entitled to it.

1. The scheme thus outlined is not a "lottery," since it does not involve an element of chance: *Quatsoe* v. *Eggleston*, 42 Or. 315 (71 Pac. 66). See the notes to that case in 56 Cent. L. J. 332. The same conclusion was reached by the Kentucky Court of Appeals: *Commonwealth* v. *Jenkins*, 159 Ky. 80 (166 S. W. 794, Ann. Cas. 1915B, 170, and notes). After our decision on this subject was rendered, a statute was enacted licensing the use of trading stamps, a somewhat analogous scheme, by requiring the payment of an excise tax based upon the gross receipts of merchants using them: Laws 1915, c. 228.

2-4. The stipulation in the contract hereinbefore quoted that, if 3⅓ per cent of the defendants' sales for the year beginning July 1, 1914, did not amount to

$400, the purchase price of the goods, etc., to be shipped, the plaintiff would pay them the deficiency in cash, though designated in the writing as a "guaranty" of sales, was not properly a "guaranty," since it did not contain a promise to answer for the debt, default, or miscarriage of another. Nor did the agreement create a "suretyship" between the parties, for the obligation was not secondary and successive as distinguished from a liability which is joint and equal: Frost, Guaranty Ins. (2 ed.), § 3, notes 1, 2. The policy contract may be classed as a species of commercial insurance: Frost, Guaranty Ins., § 2. The plaintiff was the insurer, the defendants were the insured, the customers which they had or might obtain were the risk, and the profit which the plaintiff expected to make from the sale of its goods, etc., constituted the premium for issuing the policy contract.

Corporations may be formed under general laws of this state for the transaction of insurance business, provided such corporation has a paid-up, unimpaired cash capital equal to $100,000 in gold coin which is invested in government, state or municipal bonds, or in notes secured by mortgages upon first-class, otherwise unencumbered, real estate, the market value of which shall be at least double the amount of the loan: Section 4610, L. O. L.

"The powers of the corporation," says a text-writer, "are dependent upon the grant of the sovereign power, and it is well settled that a corporation has only such powers as are expressly granted in its charter or which are necessary for the purpose of carrying out its express powers and the purpose of its incorporation": 7 R. C. L. 526.

"Every corporation," says a noted author, "has by necessary implication the power to do whatever is necessary to carry into effect the purposes of its crea-

tion, unless the doing of the particular thing is prohibited by law or by its charter'': 10 Cyc. 1097.

Though the tendency of modern decisions is to assimilate the powers of a private corporation to those of individuals and partnerships (*Fink* v. *Canyon Road Co.,* 5 Or. 301), it is not believed that the liberal rule thus promulgated authorizes a domestic corporation, organized ''to engage in and conduct a wholesale establishment or establishments, to buy, sell, import, export, manufacture and generally deal in goods, wares and merchandise of every class, nature and description,''. to transact guaranty insurance business when such employment can be conducted only in the restricted manner prescribed by the clause of the statute cited.   But however this may be, as the trial court evidently adopted the defendants' theory and determined when it directed a verdict in their favor that the contract of insurance was *ultra vires,* was such defense proper when it appears from the testimony that the plaintiff probably did not ship all the goods ordered but ''sent down some silverware and tickets, etc.,'' to the defendants, which commodities, so far as disclosed by the transcript before us; were retained and no compensation therefor was made?   Before discussing that question, it is proper to state that the averment in the reply hereinbefore quoted, if such defense is ever available, is not sustained by the testimony, for it does not appear therefrom that all the goods ordered by the defendants had been shipped.   It has been held that, when the contract has been fully executed by the corporation, the other party, while retaining the benefits thereby received, is estopped to invoke the defense of *ultra vires:* 10 Cyc. 1163.   With the cases usually cited as sustaining the tenet that a corporation cannot invoke the defense of *ultra vires* when the other party to the contract

has wholly or partially performed his part of the agreement are *Railway Co.* v. *McCarthy*, 96 U. S. 258 (24 L. Ed. 693), and *San Antonio* v. *Mehaffy*, 96 U. S. 312 (24 L. Ed. 816). In *Central Transp. Co.* v. *Pullman's Car Co.*, 139 U. S. 24, 54 (35 L. Ed. 55, 11 Sup. Ct. Rep. 479, 486), Mr. Justice GRAY, discussing this subject, observes:

. "It was argued in behalf of the plaintiff that, even if the contract sued on was void, because *ultra vires*, and against public policy, yet that, having been fully performed on the part of the plaintiff, and the benefits of it received by the defendant, for the period covered by the declaration, the defendant was estopped to set up the invalidity of the contract as a defense to this action to recover the compensation agreed on for that period. But this argument, though sustained by decisions in some of the states, finds no support in the judgments of this court. The passages cited by the plaintiff from *Railway Co.* v. *McCarthy*, 96 U. S. 258, 267 (24 L. Ed. 693), and *San Antonio* v. *Mehaffy*, 96 U. S. 312, 315 (24 L. Ed. 816), are no more than a passing remark that ''the doctrine of *ultra vires*, when invoked for or against a corporation, should not be allowed to prevail when it would defeat the ends of justice or work a legal wrong,' and a repetition, in substance, of the same remark, adding 'if such a result can be avoided.' ''

The facts set forth in the reply are not supported by the evidence, and the averment does not constitute an estoppel in this instance.

5. Returning to the question of *ultra vires* as alleged in the answer, it will be kept in mind that the plaintiff shipped to the defendants a part, at least, of the merchandise ordered. So far as such goods were delivered, the contract ceased to be executory and became executed. If the plaintiff's articles of incorporation had included the kind of indemnity specified, and there had been a compliance with the requirements of the

statute in respect to property qualifications and the proper investment of its funds, the clause of the policy referred to would probably not be regarded as illegal. Mr. Reese, in his work on Ultra Vires (Section 74), says:

"Though courts acting under proper construction of the law will sustain no action on contracts made by corporations which are beyond the scope of their powers, and therefore unlawful and void, yet relief may be had by the party aggrieved by disaffirming the contract and suing to recover as on a *quantum meruit* the value of what the defendant has actully received the benefit of."

See the decisions cited in support of the text quoted.

In *Central Transp. Co.* v. *Pullman's Car Co.,* the learned justice, at page 60 of 139 U. S. (35 L. Ed. 55, 11 Sup. Ct. Rep. 488), remarks:

"A contract *ultra vires* being unlawful and void, not because it is in itself immoral, but because the corporation, by the law of its creation, is incapable of making it, the courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it."

This legal principle was recognized in the case of *Municipal Co.* v. *Baker County,* 39 Or. 396 (65 Pac. 369), where it was ruled that though a voluntary agreement, entered into by a county involving it with liabilities after the limit of its indebtedness had been reached, was *ultra vires,* and unenforceable, a person contracting with a county under such circumstances might recover property transferred to it upon returning unpaid county warrants given to evidence the receipt of such

property.   To the same effect, see, also, 10 Cyc. 1150;
7 R. C. L. 678.

As the plaintiff could invoke this remedy, it must also
be available to the defendants.   It savors of illegality
to permit a party who has received the benefit of an
executed contract which does not trench upon public
policy nor violate an express legislative enactment to
interpose the defense of *ultra vires* when sued for the
value of the property which he has obtained from a cor-
poration pursuant to his contract with it.   If upon a
disaffirmance of an *ultra vires* agreement the plaintiff
could recover only the reasonable value of the com-
modities delivered, the defendants when disapproving
such contract should be required either to return the
goods which they have received, if any remain, or to
pay the reasonable value of the entire merchandise,
etc., so obtained.

An error was committed in directing the verdict
herein.   The judgment is therefore reversed, and the
cause will be remanded with permission to apply to the
trial court for leave to file an amended answer if the
defendants so elect, alleging a total or partial failure
of the consideration for the note and setting forth the
reasonable value of the property which they received
and retained; the payment for which or the rendering
of a judgment therefor to discharge the negotiable
instrument.               REVERSED AND REMANDED.