BRENARD MANUFACTURING COMPANY, Appellant, v. J. D. SKETCHLEY STORE et al., Appellees.

PRINCIPAL AND AGENT: Agent's Liability to Third Persons—
1  Contracts. There is no liability on the part of an agent to a third person, where the contract is in the name of the principal, and there is no claim of wrongful representation or lack of authority to act.

PRINCIPAL AND AGENT: Authority of Agent—Burden of Proof.
2  The burden of proof is on one seeking to charge a principal on a contract, to show that the agent had authority from the principal to sign the contract.

PARTNERSHIP: Creation and Requisites—Supplying Building and Funds to Run a Store. Where the owner of a store building supplied the building and funds for the operation of a grocery store, under an arrangement whereby he was to receive rent and interest, and the storekeeper was to have all the profits, the owner retaining title to the stock, a partnership was not created.

PRINCIPAL AND AGENT: Authority of Agent—Contracts—Ratification—Evidence. Evidence reviewed, and held that, where the owner of a store building had supplied funds for the operation of a grocery store, he was not liable on a contract made by the storekeeper for the purchase of pianos and jewelry for use in a trade extension scheme, he never having authorized, approved, or ratified the contract.

*Appeal from Hamilton District Court.*—R. M. WRIGHT, Judge.

MARCH 14, 1919.

ACTION to recover on a written contract. There was a verdict for the defendants and judgment entered thereon. The plaintiff appeals.—*Affirmed.*

*J. M. Blake,* for appellant.

*Wesley Martin* and *D. C. Chase, Jr.,* for appellees.

EVANS, J.—The contract sued on was in the form of an order addressed to the plaintiff, and purported to be signed by the defendants, or one of them. Such order was as follows:

"The Brenard Manufacturing Company (Not Incorporated),
    "Iowa City, Iowa.

            "P. O., Webster City, Ia., Aug. 24, 1915.
    "Brenard Mfg. Co.,

    "Gentlemen:—On your approval of this order, deliver to me at your earliest convenience, F. O. B. factory or distributing point, 2 Claxton pianos, watches, silverware and advertising matter described in this and reverse side, in payment for which I herewith hand you my six notes, pay-

able to your order, aggregating $640. ' If order is not approved and shipped by you, the notes are to be canceled and returned to me.

"The Brenard Mfg. Co. agrees to send their organizer to us on or before October 10th, for constructive campaign work and for the completion of district organization. Organizer to remain for such a period as Brenard Mfg. Co. may deem necessary, during which time I am to furnish free the necessary conveyance to properly conduct the work.

"You further agree to conduct all the correspondence with district secretaries, etc., in conducting and managing the entire trade extension campaign.

"I agree to furnish you within ten days names and addresses of teachers and directors of all schools in a ten-mile area about our store, with whom you are to take up correspondence immediately.

"I agree to take the shipments promptly, carry out the trade extension campaign plan, promptly meet all obligations entered into under this agreement, keep the pianos well displayed in my store, issue premium deposit checks to the amount of all purchases, and every sixty days of this contract to report to you my gross sales, and promptly furnish you all information you request to enable you to push the trade extension campaign.

"I hereby certify that my last twelve months sales were not' less than $50,000.00, and upon this figure my next twelve months sales to be $60,000.00, and that if 15/16 per cent of my gross sales do not amount to $640 for the next twelve months, you will pay me the deficiency in cash, and immediately upon approval of this order, send your bond for $640.00 to cover this agreement with me.

"In consideration of the special methods set forth in your copyrighted plan and the special terms and agreements herein, this order cannot be countermanded.

"Brenard Manufacturing Co.'s Extension Campaign Order.

"Consists of the following:

"2 Claxton pianos, mahogany finish, represented and described on reverse side.

"1 book, 'The Brenard Mfg. Co.'s **Trade Booster** Methods.'

"25 posters, 28x36.

"500 $5.00 trading books.

"1 set of 'display card' signs.

"1 electroplate of player piano.

"1 instructions for newspaper advertising, which, if done, is to be without expense to Brenard Mfg. Co.

"36 premium deposit checks in six colors, in denomination of 5 cents to $50.00.

"1 O-Size ladies' 20-year gold-filled watch, with 15 jewel Elgin or Waltham movement.

"5 O-Size ladies' or gents' 10-year gold filled watches, with 7 jewel Swiss lever movement.

"1 toilet set (comb, brush, and mirror).

"Queen Esther Silverware (Manufactured by Wm. Rogers).

"We warrant for five years; any article will be replaced during that time.

"1 dozen tea spoons.

"1 dozen dessert spoons.

"1 dozen table spoons.

"1 dozen knives, solid handles.

"1 dozen dessert forks.

"1 dozen soup spoons.

"1 child's set.

"1 cream or gravy ladle.

"1 berry spoon.

"1 dozen orange spoons.

"½ dozen butter knives.

"½ dozen sugar shells.

"1½ dozen cold meat forks.

"1 dozen coffee spoons.

"1 dozen butter spreaders.

"1 dozen oyster forks.

"½ dozen pickle forks.

"1 dozen fruit knives.

"Six due bills for $375.00, $365.00, $355.00, $345.00. $335.00, and $325.00, respectively, each good for one Claxton player piano when accompanied with the difference in cash, as designated by the due bills.

"Or when regular Claxton piano, instead of player piano is desired, six due bills for $300.00, $295.00, $290.00, $285.00, $280.00, and $275.00, respectively, each good for one Claxton piano when accompanied with the difference in cash, as designated by the due bills. Price $600.00.

"[Signed] J. D. Sketchley, Store Purchaser,

"By T. B. Kearns, Mgr."

Attached to the said order and as a part thereof were six purported promissory notes for a sum total of $640. In his argument the appellant treats his suit as an action on the promissory notes. It is not such, except in the sense that the notes are a part of the contract above set forth. The plaintiff averred in his petition "that the name of *J. D. Sketchley Store* was a trade name or term, under which J. D. Sketchley and T. B. Kearns were at the time doing business, J. D. Sketchley as proprietor and T. B. Kearns as manager." We find it difficult to get an intelligent conception of the contract above set forth. We quote the following explanation from the brief of the appellant:

"The Brenard Manufacturing Co., of Iowa City, is a concern that is engaged in what they term a trade extension business, whereby they sell to a merchant certain goods, consisting of pianos, jewelry, etc., for certain sum, *to be given away* by the merchant to the person, school, or so-

ciety purchasing the most goods at the store, as shown by
trade coupons, which they furnish, together with a mass of
advertising they send out to customers and furnish an ex-
perienced canvasser to *organize the territory.*"

From the record as a whole, we gather that the enter-
prise consisted of some sort of contest, in the nature of a
lottery, whereby the plaintiff was to give away to third par-
ties all the articles enumerated in the contract, as a method
of so-called advertising for defendants. The contention for
the plaintiff is that, under the undisputed evidence, it was
entitled to a directed verdict against both defendants. Dis-
regarding, for the moment, the objections of the appellees
that appellant's argument is not founded upon proper ex-
ceptions, we look to the merits of the controversy.

I.   Was the plaintiff entitled to a directed verdict
against Kearns?

Kearns signed the contract and the notes as purported
"manager" only. The petition specifically alleged that
Sketchley was the proprietor, and that Kearns was his man-
ager. Notwithstanding this allegation, the
petition prayed judgment against both.
There was no allegation in the petition that
sought to charge Kearns with liability on
the ground that he lacked the authority
which he assumed, or that he wrongfully assumed to repre-
sent his purported principal, when he had, in fact, no
authority so to do. Upon this state of the pleadings,
Kearns must be deemed a mere agent; and he was entitled
to a directed verdict on that ground alone.

1. PRINCIPAL AND
AGENT: agent's
liability to third
persons: con-
tracts.

II.   Was the plaintiff entitled to a directed verdict
against Sketchley? The plaintiff had the burden of proof,
as against Sketchley, to show that Kearns was authorized

to sign the contract. The business which

**2. PRINCIPAL AND AGENT: authority of agent: burden of proof.** Kearns managed was a retail grocery store. No groceries are included in the contract.

The relation between Sketchley and Kearns is not easy of definition. Kearns was a man of business experience, and without capital. Sketchley was the owner of a store building. He supplied the funds to place a grocery stock of goods in such store building,

**3. PARTNERSHIP: creation and requisites: supplying building and funds to run a store.** and turned it over to Kearns under an arrangement whereby Sketchley was to receive $20 a month rent, and 8 per cent interest upon the capital invested in the stock.

These charges to Sketchley were to be paid out of the profits, and the remainder was to belong to Kearns. The title to the stock was held by Sketchley as in the nature of security. The arrangement between them, therefore, was not a partnership, nor was it wholly a contract of employment. It may be said, also, that it did involve, to some extent, the relation of principal and agent. What is clear is that

**4. PRINCIPAL AND AGENT: authority of agent: contracts: ratification: evidence.** there was nothing in the contract between Sketchley and Kearns which could be construed to confer ·authority, either express or implied, upon Kearns to invest in the name of Sketchley in a lot of pianos and jewelry, for the purpose of distributing them gratis among alleged ticket holders. There was no evidence that Sketchley at any time or in any manner authorized, approved, or ratified the contract in question. The plaintiff named "J. D. Sketchley Store" as a defendant. The evidence is undisputed that there was no such entity. The store was known locally as "Kearns' Grocery."

To go further into the record, the contract sued on discloses that the plaintiff bound itself to results in the way of increase of business, as a result of the advertising scheme.

The evidence is undisputed that there were no results, and that there was no increase in business.

We reach the clear conclusion that Sketchley, also, was entitled to a directed verdict.

The trial court was more generous to the plaintiff. It submitted certain issues to the jury whereby a verdict might have been rendered against one defendant or the other, but not against both. The plaintiff complains of these instructions. It is enough to say that they were more favorable to the plaintiff than it was entitled to, as we have already indicated. The plaintiff's case was properly dismissed. The judgment below is, accordingly,—*Affirmed.*

LADD, C. J., PRESTON and SALINGER, JJ., concur.