BRENARD MANUFACTURING COMPANY, Appellee, v. JESSUP & BARRETT COMPANY, Appellant.

**APPEAL AND ERROR:** Assignments of Error—Failure of Considera-
1    tion. Where nothing is said in the statements of errors relied
upon for reversal, or in the brief points, upon the question of
failure of consideration, the Supreme Court will not consider
that question.

**LOTTERIES:** Definition. The term "lottery" has been defined by
2    the courts as a scheme for a division or distribution of prop-
erty or money by chance or by any game of hazard, or a
species of game among persons who have paid or agreed to pay
a valuable consideration for the chance to obtain a prize; and
authorities uniformly agree that the three elements necessary to
constitute a lottery are a consideration, the element of chance,
and a prize.

**LOTTERIES:** Elements—Sufficiency of Evidence. Evidence re-
3    viewed, and held that a contract under which a defendant gave
notes for a piano player and for other merchandise, to be used
in a trade extension campaign, and in which no monetary con-
sideration was paid by the contestants, did not provide for the
distribution of prizes in a manner constituting a lottery, within
Sec. 28, Art. 3, Iowa Const., and Sec. 5000, Code, 1897, and
therefore was not void.

*Appeal from Harrison District Court.*—J. B. ROCKAFEL-
LOW, Judge.

JULY 7, 1919.

ACTION against a copartnership on five promissory
notes, three for $105 and two for $100 each. At the close
of the evidence, both parties moved for a directed verdict,
whereupon the jury was dismissed, and the cause, by agree-
ment, submitted to the court. Plaintiff was awarded judg-
ment as prayed, and defendant appeals.—*Affirmed.*

*Cochran & Wolfe* and *Burke & Welch,* for appellants.

*E. R. Caldwell* and *Roadifer & Roadifer,* for appellee.

STEVENS, J.—The five notes, and one other for $105, which was paid before this action was commenced, were given in payment of a quantity of merchandise, consisting of a Claxton piano and player, a quantity of table silverware, and a miscellaneous assortment of advertising and other material necessary for carrying out the terms of a contract, which provided for a "trade extension campaign" in the interest of defendant, a mercantile copartnership, with its place of business at Dunlap, Iowa. The articles of merchandise purchased are the same as were included in the contract set out in full in *Brenard Mfg. Co. v. J. D. Sketchley Store*, 185 Iowa 694.

Briefly, the scheme set forth in the contract and printed instructions to defendant was as follows: The piano and player were to constitute a grand prize, to be given to a contestant receiving the highest number of "votes." "Votes" were obtained by selling cards to customers of defendant, entitling the holder to merchandise to the amount shown upon the card, and also to a credit for a designated sum upon the retail price of silverware, which the customer might purchase of the defendant. Premiums were to be given to contestants, from time to time, for the purpose of increasing their activities in the interest of the campaign for trade extension, and to increase the number of "votes" to be cast in the contest for the grand prize, in favor of each contestant. To obtain contestants, defendant agreed to furnish plaintiff with the name and address of each school teacher, together with the members of the various school boards, within a radius of ten miles of Dunlap, and to select 150 names from its customers and those of its competitors, to be nominated as contestants, plaintiff agreeing to write them letters, explaining the method of carrying on the contest. Each candidate nominated as contestant, upon signing an agreement to enter the race for the grand prize, was given a "Queen Esther" silver spoon, free. Provision was

made in detail for the award of premiums to contestants, but the method of awarding same does not appear to have been objectionable.

The territory surrounding Dunlap did not prove a fruitful one for the production of contestants., Persons of proper age, and otherwise suitably endowed, residing in. that rich and prosperous community, were not attracted by the prospect of winning the "mahogany" finished piano and player, or a few pieces of presumably not particularly desirable silver tableware; and, notwithstanding the fact an enthusiastic propagandist was sent from the home office, but little interest was aroused upon the part of either the contestants or the public. The scheme languished and shortly died, leaving the defendant in possession of the merchandise, advertising matter, etc., received by plaintiff under the contract. No premiums appear to have been earned by the contestants, and defendants still have the piano player and silverware, except the few "Queen Esther" spoons that were given to prospective contestants, and the merchandise was, at the time of the trial, in possession of defendant.

The defenses interposed by defendant to the notes were: (a) Total failure of consideration; and (b) that the consideration for the notes as a gambling contract, which provided for a distribution of the merchandise purchased for prizes to the contestants, in such a manner as to constitute a lottery, and, therefore, prohibited by statute and contrary to public policy and void.

Nothing is said by counsel for appellant, in the statement of errors relied upon for reversal or in the brief points, upon the question of a failure of consideration; and hence we can consider only the other defenses

1. APPEAL AND ERROR: assignments of error: failure of consideration.

above mentioned.

Section 28, Article 3, of the Constitution, prohibits the legislature from authorizing a lottery, or the sale of lottery tickets,

in this state; and Section 5000 of the Code of 1897, which is as follows, prohibits all lottery schemes and the sale of lottery tickets.

"If any person make or aid in making or establishing, or advertise or make public any scheme for any lottery; or advertise, offer for sale, sell, negotiate, dispose of, purchase or receive any ticket or part of a ticket in any lottery or number thereof; or have in his possession any ticket, part of a ticket, or paper purporting to be the number of any ticket of any lottery, with intent to sell or dispose of the same on his own account or as the agent of another, he shall be imprisoned in the county jail not more than thirty days, or be fined not exceeding one hundred dollars, or both."

The term "lottery" has been variously defined by the courts as a scheme for the division or distribution of property or money by chance, or any game of hazard, or a spe-
2. LOTTERIES: definition. cies of game among persons who have paid or agreed to pay a valuable consideration for the chance to obtain a prize. *Chancy Park Land Co. v. Hart,* 104 Iowa 592; *Burks v. Harris,* 91 Ark. 205 (120 S. W. 979) ; *Commonwealth v. Jenkins,* 159 Ky. 80 (166 S. W. 794, 795) ; *Eastman v. Armstrong-Byrd Music Co.,* 52 L. R. A. (N. S.) 108.

Authorities uniformly agree that the three elements necessary to constitute a lottery are: (a) A consideration; (b) the element of chance; and (c) a prize. *State v. Perry,* 154 N. C. 616 (70 S. E. 387) ; *Hull v. Ruggles,* 56 N. Y. 424; *Cross v. People,* 18 Colo. 321 (32 Pac. 821) ; *Eastman v. Armstrong-Byrd Music Co.,* supra.

Contracts, although not in all respects identical, but of the same general character and import, in which the same party was plaintiff, were considered in *Brenard Mfg.*

*Co. v. J. D. Sketchley Store,* supra, and *Bre-nard Mfg. Co. v. W. Benjamin & Sons,* 172 N. C. 53 (89 S. E. 797). None of the questions presented upon this appeal were involved in the *Sketchley* case; but in the case against Benjamin & Sons, the Supreme Court of North Caroline, by a divided court, held the contract void and unenforcible, under the statutes of that state making it a misdemeanor to "dispose of any species of property whatsoever, money or evidences of debt, or in any manner to distribute gifts or prizes upon tickets or certificates sold for that purpose."

3. LOTTERIES: elements: sufficiency of evidence.

Many advertising propositions and alleged schemes for trade extension have been before the appellate courts, and there is a want of harmony in their decisions, due often, perhaps, to the peculiar wording of the statutes upon which the decision rests. Formerly, "guessing contests," wherein the contestants sought to estimate the number of beans in a bag, or the number of votes that would be cast at a coming election, were generally sustained by the courts; but the recent trend of decisions is to hold that an element of chance is involved in contests of this nature. *Waite v. Press Pub. Assn.,* 155 Fed. 58; *Stevens v. Cincinnati Times-Star Co.,* 72 Ohio St. 112 (73 N. E. 1058); *State v. Mumford,* 73 Mo. 647; *Quatsoe v. Eggleston,* 42 Ore. 315 (71 Pac. 66).

A contract providing for a "popularity contest," in which an automobile was the grand prize to be given the contestant receiving the largest number of votes, which were issued to contestants for each subscriber obtained for the Crittenden Record Press, a newspaper published at Marion, was sustained by the Kentucky Court of Appeals in *Commonwealth v. Jenkins,* supra, as a valid contract, and not in violation of the statutes of that state. The scheme for obtaining votes and awarding the grand prize in the above case was similar to the method provided by the contract in the case at bar.

No monetary consideration was paid by the contestants in the case at bar for a chance to win the prize; but, upon signing a contract agreeing to become a contestant, each candidate was given a "Queen Esther" silver spoon. The prize was to be awarded to the contestant receiving the highest number of votes, and no element of chance was involved in the manner of making the award. It was a simple matter of mathematical calculation, in which no favoritism could be shown contestants, and there were no blanks to be drawn. The scheme, whether commendable or not, does not partake of the character of a lottery. The grand prize and all premiums to be awarded during the campaign were to be given to the contestant having the largest number of votes, obtained in the manner heretofore stated. It was a question largely of "hustle." Lacking the element of chance necessary therefor, the scheme did not provide for a distribution of prizes in a manner constituting a lottery, and the contract is not void under the terms of the statute quoted above.

Counsel for appellant relies upon the holding of the Supreme Court of Michigan, in *Boston P. & M. Co. v. Seckinger,* 198 Mich. 312 (164 N. W. 263), wherein a contract somewhat similar to the contract under consideration was held to be against public policy and void. The decision of the Michigan court is based upon the statute of that state, and the contract is especially condemned because of numerous provisions which, if carried out, would be unfair and dishonest to the contestants; but none of these are found in the contract under consideration.

No other grounds for reversal are argued by counsel for appellant. It follows that the judgment of the court below must be and is—*Affirmed.*

LADD, C. J., WEAVER and GAYNOR, JJ., concur.